FILED

OCT 22 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS DIVISION

MALIBU MEDIA, LLC,

Plaintiff,

v.

JOHN DOES 1-49,

Defendants.

Case No. 1:12-cv-06676

## MOTION TO QUASH SUBPOENA AND VACATE ORDER GRANTING PLAINTIFF LEAVE TO SERVE THIRD PARTY SUBPOENAS

Pursuant to Fed. R. Civ. P. 45(c)(3)(A), John Doe No. 1, Pro se, respectfully moves this Honorable Court for dismissal or severance of this case as well as a Motion to Quash Subpoena served on internet service provider (ISP) "Comcast".

### Introduction:

The subpoena requires disclosure of protected information and subjects John Doe No. 1 identified as IP Address: 24.1.13.173, to undue burden. Additionally, the subpoena seeks information that is not relevant given Plaintiff's inability to link DOE No. 1 to alleged infringing activity. I base this motion on following factors: (1) improper joinder, (2) failure to make prima facie showing of copyright infringement and (3) the IP Address does not identify the alleged infringer.

Plaintiff filed suit in the Northern District of Illinois (C.A. No. 1:12-cv-06676) against 49 unnamed DOE defendants, who are identified in its Amended Complaint only by internet protocol (IP) addresses. Plaintiff alleges that these DOE defendants have illegally obtained an

1

adult video identified as the motion picture entitled "Young & Hot" (the "Work") PA0001794969 (the "Registration"), in violation of Plaintiff's copyrights.

DOE No. 1 is a resident of the Matteson, Illinois. Comcast is an internet service provider (ISP) that provides internet service to its customers, including DOE No. 1. Plaintiff, MALIBU MEDIA, LLC, on information and belief, is a producer of adult entertainment films and content. Plaintiff filed an ex parte application for "early discovery" (before a Rule 26(f) conference) so that it could serve subpoenas on ISPs to determine the internet subscriber names, addresses, and e-mail addresses associated with the IP addresses listed in its Amended Complaint. Plaintiff served a subpoena on Comcast, to compel the disclosure of documents to identify the name, address, telephone number, and e-mail address of John Doe's 1-49, so Doe's No. 1-49 can be named as a defendant in Plaintiff's copyright infringement action.

DOE No. 1 has standing to move to quash the subpoena because it seeks disclosure of personal identification information considered to be confidential and over which DOE No. 1 has personal and proprietary interests. DOE No. 1 also has standing to move to quash the subpoena to protect reputational interests. FED. R. CIV.P. 45(c)(3)(B) allows a person affected by, but not subject to, a subpoena to move to quash the subpoena.

**IMPROPER JOINDER:**

The Plaintiff's claim of concerted action as justification for joinder is groundless. The Plaintiff cannot establish that the forty-nine alleged copyright violations arose out of "the same transaction or occurrence, or series of transactions and occurrences." (Fed. R. Civ. P. 20(a)). At best, the Plaintiff can show that forty-nine individuals at different times used BitTorrent protocols to download and assemble pieces of a particular movie file between June 6 and August 1, 2012. There is no allegation – and could not be, that explains how the Defendants' IP

addresses were gathered – that any of the pieces of the movie file allegedly downloaded and reassembled by forty-nine Illinois Defendants came from any of the other Illinois Defendants. The Plaintiff falsely alleges that joinder is appropriate because the Defendants all downloaded the same file "within a limited period of time". However, Exhibit A to the Complaint shows that the downloads occurred over a span of nearly two and a half months, and no other Defendant downloaded or uploaded "The Work" the same day as Doe NO. 1. The relevant question is whether any of the defendants engaged in "concerted activity" by sharing parts of the same file with each other. By the nature of how the BitTorrent protocols function at least one other defendant would have needed to be "sharing, uploading or downloading" "the work" on the same day and time. Plaintiff has no evidence to suggest that this occurred. Since the investigation upon which the Complaint is based cannot support any claim of "concerted activity" by the forty-nine Defendants, joinder is improper under Fed. R. Civ. P. 20(a). The Court should, therefore, sever the claims against Doe No. 22.

Plaintiff's sole alleged basis for joinder – its explanation of the "BitTorrent Protocol" – is meritless. In fact, nothing in the BitTorrent Protocol creates a relationship amongst the hundreds of Defendants residing in all different parts of the country. As one court concluded just four months ago in an identical case:

> Under the BitTorrent Protocol, it is not necessary that each of the Does 1-188 participated in or contributed to the downloading of each other's copies of the work at issue – or even participated in or contributed to the downloading by an of the Does 1-188. ... The bare fact that a Doe clicked on a command to participate in the Bit Torrent Protocol does not mean that they were part of the downloading by hundreds or thousands of individuals across the country or the world.

*Hard Drive Prods., Inc. v. Does 1-188*, 2011 U.S. Dist. LEXIS 94319, at *38-39 (N.D. Cal. Aug. 23, 2011); *On the Cheap, LLC v. Does* 1-5011, 2011 U.S. Dist. LEXIS 99831, at *10 (N.D. Cal. Sept. 6, 2011) (stating that joinder would violate the "principles of fundamental fairness" and be prejudicial to the defendants).

Plaintiff attempts to state that Defendants made a concerted effort stating that "each of the Defendants was part of a series of transactions, involving the exact same torrent file containing of Plaintiff's copyrighted Works, and was accomplished by the Defendants acting in concert with each other." This representation is misleading. Even though Plaintiff claims that Defendants downloaded the same file, it has not alleged that Defendants exchanged any piece of the relevant file with each other or actually acted in concert with one another which would have to have taken place for the BitTorrent protocols to even function. *See, e.g., MCGIP, LLC v. Does 1-149*, 2011 U.S. Dist. LEXIS 108109, at *7 (N.D. Cal. Sept. 16, 2011) (finding misjoinder where the plaintiff failed to show that and of the defendants actually exchanged any piece of the seed file with another); *Boy Racer v. Does 2-52*, 2011, U.S. Dist. LEXIS 86746, at *4 (N.D. Cal. Aug. 5, 2011) (finding misjoinder where the plaintiff did not plead facts showing any particular defendant illegally shared the plaintiff's work with any other particular defendant). This clear lack of concerted effort on the part of the Defendants is dispositive of Plaintiff's joinder argument.

Federal courts have previously recognized this improperness of joinder. In a BitTorrent case nearly identical to this one, *CP Productions, Inc. v. Does 1-300* case 1:201 0cv06255, the court noted before dismissal:

> [I]fthe 300 unnamed defendants have in fact infringed any copyrights (something that this court will assume to be the case, given the Complaint's allegations that so state), each of those infringements was separate and apart from the others. No predicate has been shown for thus combining 300 separate actions on the cheap -if CP had sued the 300

4

claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350.

In another *Case 2:11-cv-03995* which addressed three cases *(Malibu Media, LLC v. John Does 1-26, CV 12-1147 (J..)) (GRB). lvlalibu Media, LLC v. John Does 1-11,* C'V *12-1150 (LDW) (GRB),* and *Patrick Collins, Inc. v. John Does 1-9, CV 12-1154 (ADS) (GRB))* U.S. Magistrate Judge, the Honorable Gary Brown in discussing these issues noted that:

> "' These developments cast doubt on plaintiff's assertions that "[t]he ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity." *See, e.g., Alalibu* 26, CompL At ~9, or that subscribers to the IP addresses listed were actually the individuals who carried out the complained of acts. *As* one judge observed:

8 Case 2:12-cv-02090-BMS Document 10 Filed 06/12/12 Page 8 of 26

> The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2." The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material. Counsel stated that the true offender is often "the "teenaged son ... or the boyfriend if it's a lady." Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks. The risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading "My Little Panties # 2" [pps. 7-8, citations omitted in the original, emphasis original].

Finally, also writing in case 2: *ll-cv-03995,* Judge Brown described the litigation practices in cases where pre-service discovery is the basis for identifying putative defendants as "abusive" and went on to state:

> Our federal court system provides litigants with some of the tinest tools available to assist in resolving disputes; the courts should not, however, permit those tools to be used as a bludgeon. As one court advised Patrick Collins Inc. in an earlier case, "while the courts favor settlements, filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for." Patrick Collins, Inc. v. Does 1-3757, 2011 U.S. Dist. LEXIS 128029, at *6-7 (N.D.Cal. Nov. 4, 2011).

5

## PLAINTIFF FAILS TO MAKE PRIMA FACIE SHOWING OF COPYRIGHT INFRINGMENT

In order to copyright an idea, work, etc., it must be registered with the United States copyright office. The complaint references the United States copyright registration number for the motion picture "Young & Hot" (the "Work") as PA0001794969. "The Work" was registered on June 8th, 2012. Defendant's John Doe #1 alleged infringement occurred on June 6th, 2012, two days prior to the copyright registration. (See, Subpoena). Further, the Defendant is one of only two John Doe's that allegedly accessed the "the work" before the date of proper registration.

According to 17 U.S.C 412, "except for an action brought for violation of the rights of the author under 106A(a), an action for infringement of the copyright of a work that has been preregistered under 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under 411(C), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for (2) any infringement of copyright commenced after the first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication." The Defendant in this cased allegedly access the work two days prior to copyright registration as provided by the plaintiff and this no award of statutory damages or attorney's fees can be levied against the Defendant.

### IDENTIFYING INFRINGER:

Mass litigation brought by pornographers (and their attorneys, typically working on a contingent fee basis) is designed to minimize court costs while suing or threatening to sue as many individuals as possible. With the goal to intimidate innocent subscribers and force them to

6

settle – regardless of liability – simply to avoid a public accusation that they illegally downloaded pornographic material such as "Young & Hot" "the work. The Plaintiffs and their attorneys are knowingly attempting to force settlement from all named Defendants without any discovery or assessment of the merits. This intentional scheme to intimidate innocent subscribers into settling groundless claims is an abuse of process. See, *e.g., Ladd v. Polidoro*, 424 Mass. 196, 675 N.E.2d 382 (1997). The Plaintiff's goal is not to identify the illegal downloaders. Rather, its goal is to scare subscribers, into paying hush money and preventing disclosure of their identities to the Plaintiff. This purpose – to use the John Doe Complaint and expedited discovery to achieve a collateral, extortionate result, rather than the legitimate goal of learning the true identity of the downloaders – is "unreasonable and oppressive," a pre-1991 standard now incorporated into the current requirement that a subpoena must be quashed if it "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv):

MALIBU MEDIA, LLC filed complaint and ex parte request for expedited discovery in yet another in a wave of suits in which copyright infringement plaintiffs seek to "tag" a defendant based solely on an IP address. However, an IP address is not equivalent to a person or entity. It is not a fingerprint or DNA evidence – indeed, far from it.

In a remarkably similar case in which an adult entertainment content producer also sought expedited discovery to learn the identity of persons associated with IP addresses, United States District Judge Harold Baker of the Central District of Illinois denied a motion for expedited discovery and reconsideration, holding that:

> "IP subscribers are not necessarily copyright infringers…The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." Order of Apr. 29, 2011, VPR

Internationale v. DOES 1-1017, No. 2:11-cv-02068 (Central District of Illinois) (Judge Harold A. Baker) [hereinafter VPR Internationale Order],

The point so aptly made by Judge Baker is that there may or may not be a correlation between the individual subscriber, the IP address, and the infringing activity. Id. The risk of false identification by ISPs based on internet protocol addresses is vividly illustrated by Judge Baker when he describes a raid by federal agents on a home allegedly linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP (in the same fashion as Plaintiff seeks to extract such information from Comcast.) After the raid revealed no pornography on the family computers, federal agents eventually learned they raided the wrong home. The downloads of pornographic material were later traced to a neighbor who had used multiple IP addresses through subscribers' wireless (Wi-Fi) connections. Id. This risk of false identification and false accusations through disclosure of identities of internet subscribers is also presented here. Given the nature of the allegations and the material in question, should this Court force Comcast to turn over the requested information, DOE No. 1 would suffer a reputational injury.

The likelihood that an individual, other than DOE No. 1, infringed Plaintiff's copyrights is too great to support any correlation between DOE No. 1 and the alleged violation that Plaintiff seeks to prove. Here, the risk of reputational injury to a young man from public exposure and association with the MALIBU MEDIA, LLC —even if later disproven—is too great and presents an undue burden to DOE No. 1 under FED. R. CIV. P. 45(c)(3)(A)(iv). See VPR Internationale Order, at 3.

Guity Deyhimy of the 4th, 9th and 10thFederal Circuit Courts, and Federal District Courts in California and D.C published an article in Journal of the Bar Association of the Disctict of Columbia where she goes on to say:

> "[T]he Copyright Act does not expressly render anyone liable for infringement committed by another (in contrast to the Patent Act)."Sony Corporation of America v. Universal City Studios, 464 U.S. 417, 434–35 (1983). An account holder cannot be held liable simply by the fact that her Internet access was identified in connection with the alleged infringing download. This being so, where a Doe defendant had neither intent nor knowledge of the passage of the infringing material, through her Internet access, no liability can attach to her merely as the account holder of such Internet access(Perfect 10, Inc. v. Cybernet Ventures, Inc., 213 F. Supp. 2d 1146, 1168 (C.D. Cal. 2002). This holds true regardless of whether the unlawful conduct is alleged to have been copying or reproduction. With regard to file sharing, such lack of intent or knowledge is even more persuasive if the alleged conduct is said to be unauthorized distribution.[24] One cannot distribute what one does not possess."

If the mere act of having an internet address can link a subscriber to copyright infringement suits, internet subscribers such as DOE No. 1 will face untold reputational injury, harassment, and embarrassment. The reputational risk that Judge Baker found to be an undue burden is equally presented here: "[W]hether you're guilty or not, you look like a suspect." Id. at 3. Moreover, this case presents the same extortion risk that so concerned Judge Baker: "Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case."

Id. Discovery is not a game. Yet, plaintiffs in these types of cases use discovery to extort settlements from anonymous defendants who wish to avoid the embarrassment of being publicly associated with this type of allegation. Id. Such abuse of the discovery process cannot be allowed to continue. Additionally, this subpoena should not have been issued in the first place because the information sought is not relevant to Plaintiff's allegations. Implicit in the rule granting subpoena power is a requirement that the subpoena seeks relevant information. See Syposs v. United States, 181 F.R.D. 224, 226 (W.D.N.Y. 1998)("the reach of a subpoena issued pursuant to [FED. R. CIV. P. 45] is subject to the general relevancy standard applicable to discovery under [FED. R. CIV. P. 26(b)(1)]."). The information linked to an IP address cannot give you the identity of the infringer. VPR Internationale Order, at 2. Because the infringer could have been anybody with a laptop passing within range of the Defendants wireless connection, the information sought by Plaintiff is not relevant to the allegations in any way. Id. Moreover, even if the information has some small amount of relevance to the claim—which it does not—discovery requests cannot be granted if the quantum of relevance is outweighed by the quantum of burden to the defendant. FED. R. CIV. P. 26(b)(2)(C)(iii). Plaintiff's request fails that balancing test. Given that DOE No. 1 was only one of many persons who could have used the IP address in question, the quantum of relevance is miniscule at best. However, as discussed above, the burden to DOE No. 1 is severe. The lack of relevance on the one hand, measured against the severe burden of risking a significant reputational injury on the other, means that this subpoena fails the Rule 26 balancing test. Id. Plaintiff's request for information is an unjustified fishing expedition that will cause reputational injury, prejudice, and undue burden to DOE No. 1 if allowed to proceed. Good cause exists to quash the subpoena served on Comcast to compel the

disclosure of the name, address, telephone number and e-mail address of DOE No. 1. *Quashing or Modifying a Subpoena*, 9A Fed. Prac. & Proc. Civ. § 2463.1 (3d ed.).

### PROTECTIVE ORDER

For good cause, Federal Rule of Civil Procedure 26 permits a court to ―issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.‖ Fed. R. Civ. P. 26(c)(1). Such protective orders may forbid disclosure altogether, or, among other measures, limit the scope of discovery. Fed. R. Civ. P. 26(c)(1)(A) & (D). Defendants John Doe 1 seeks protective order to prevent disclosure of private, identifying subscriber information.

### CONCLUSION

For the reasons outlined above, Defendant John Doe 1 respectfully requests this Court GRANT the Defendant's Motion and provide the defendant the following relief: (1) Dismiss the Defendant due to Plaintiff's failure to make a prima facie showing of copyright infringement, improper joinder of the 49 defendants, and proof that Defendant did in fact access "the work" via the reported IP address (2) Quash the subpoena at issue (3) To the extent a subpoena is not quashed, grant a protective order sealing and preventing the disclosure of any information obtained through a subpoena; and, provide any further relief to Defendant that is just and proper.

I thank the court for taking the time to review my motion.

DATED: August 22nd, 2012                    Respectfully submitted,

                                            By: /s/ John Doe
                                            John Doe 1, IP: 24.1.13.173
                                            johndoe149malibu@gmail.com

## CERTIFICATE OF SERVICE

This is to certify that a true, correct and complete copy of the foregoing Motion to Quash Subpoena was served vie Certified First Class Mail, postage pre-paid addressed to Plaintiff's counsel of record as follows:

> Paul J. Nicoletti, Esq. (P44419)
> 36880 Woodward Ave, Suite 100
> Bloomfield Hills, MI 48304
> Tel: (248) 203-7800
> Fax: (248) 203-7801
> E-Fax: (248) 928-7051
> Email: paul@nicoletti-associates.com
> *Attorneys for Plaintiff*

DATED: August 22nd, 2012                              Respectfully submitted,

                                                     By: /s/ John Doe
                                                     John Doe 1, IP: 24.1.13.173
                                                     johndoe149malibu@gmail.com