**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2012 C 6676 |
| | ) | |
| JOHN DOES 1-49, | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**JOHN DOE NO. 35'S
MOTION TO SEVER AND DISMISS
AND
MOTION TO QUASH THE OUTSTANDING SUBPOENA**

**NOW COMES** the Defendant, John Doe No. 35, by and through his

attorney, Alan Garrow of Nealis & Garrow, P.C., and as his Motion to Sever and

Dismiss and Motion to Quash the Outstanding Subpoenas, states as follows:

**BACKGROUND**

The Plaintiff is a producer and purveyor of pornographic movies. The

Plaintiff alleges the John Doe Defendants 1-49 illegally downloaded a

pornographic movie in violation of the Plaintiff's copyright. The Doe

Defendants are alleged to have accessed the video through the use of a Bit-

Torrent file sharing protocol, which is a decentralized method of distributing

data on peer-to-peer (P2P) file sharing networks.

The Plaintiff does not know the identity of the alleged infringers. Instead,

the Plaintiff has identified a series of Internet Protocol (IP) addresses assigned

to certain Comcast subscribers that purportedly accessed the copyrighted

material from that IP address. Plaintiff filed a motion for early discovery

1

seeking leave to subpoena the Internet Service Provider (Comcast) to obtain

identifying information for several IP addresses. The Plaintiff then issued a

Rule 45 Subpoena to Comcast, seeking the IP address information. Comcast,

in turn, notified the IP subscribers of the pending subpoena. John Doe No. 35

is seeking to be severed and dismissed from this matter and to quash the

outstanding Subpoena issued to Comcast.

## **IMPROPER JOINDER**

Malibu Media's case is part of a nationwide blizzard of civil actions

brought by purveyors of pornographic films alleging copyright infringement by

individuals utilizing a computer protocol known as Bit-Torrent. Courts across

the country are growing increasingly skeptical of these cases. In fact, Judge

Wright of the Central District of California while presiding over a Malibu Media

case recently described this kind of litigation as "essentially an extortion

scheme". Malibu Media v. John Does 1-10, No. 2012 CV 3623 (C.D. Cal. June

27, 2012). The foundation for this "extortion scheme" is a perversion of the

permissible joinder rule (Rule 20). Rule 20 was never intended to be a weapon

that allows copyright owners to file what amounts to a reverse class action

against multiple Defendants accused of file-sharing. In fact, Plaintiff's theory

of "swarm joinder" is being rejected by a majority of Courts across the country.

Alleging that the Doe Defendants downloaded pieces of the same movie months

apart from one another does <u>not</u> mean that the Doe Defendants are part of the

same "transaction or occurrence" for purposes of Rule 20, and the Doe

Defendants (including Doe Defendant No. 35) should be severed and dismissed from this matter pursuant to Rule 21.

Joinder is appropriate under Rule 20 only if:

> (A)    any right to relief is asserted against them jointly, severally, or in the alternative, with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B)    any questions of law or fact common to all defendants will arise in the action.

Fed.R.Civ.P. 20(a)(2).

However, joinder is not mandatory and the Court may order separate trials to protect any party against "embarrassment, delay, expense, or other prejudice." Fed.R.Civ.P. 20(b).    Under Rule 21, the Court may also sever improperly joined parties *sua sponte* or on the motion of a party.

To cut court costs while casting their shake-down net to as many individuals as possible, Plaintiff is using improper joinder in their mass lawsuits alleging copyright infringement.  Such lawsuits are similar to those all over the country, including <u>CP Productions, Inc. v. Does 1-300</u>, No. 2010 CV 6255, (N.D. Illinois, February 24, 2011, Judge Milton Shadur) where the Court noted before dismissal:

> If the 300 unnamed defendants have in fact infringed any copyrights (something that this Court will assume to be the case, given the Complaint's allegations that so state), each of those infringements was separate and apart from the others.  No predicate has been shown for thus combining 300 separate actions on the cheap – if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000.00 rather than $350.00.

Later, Judge Shadur writes about such Plaintiffs' abuse of the litigation system "in more than one way" with its "ill-considered" lawsuit:

> This Court has received still another motion by a "Doe" defendant to quash a subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP") against no fewer than 300 unidentified "Doe" defendants – this one seeking the nullification of a February 11, 2011 subpoena issued to Comcast Communications, LLC. This Court's February 24, 2011 Memorandum Opinion and Order has already sounded the death knell for this action, which has abused the litigation system in more than one way. But because the aggrieved Doe Defendants continue to come out of the woodwork with motions to quash, indicating an unawareness of this Court's dismissal of this action, CP's counsel is ordered to appear in court on March 9, 2011 at 9:00 a.m. Counsel will be expected to discuss what steps should be taken to apprise all of the targeted "Doe" defendants that they will not be subject to any further trouble or expense as a result of this ill-fated (as well as ill-considered) lawsuit." CP Productions, Inc. v. Does 1-300, No. 2010 CV 6255 (dismissed ALL John Doe defendants).

See, Judge Milton Shadur's Memorandum Opinions and Orders from said matter attached as Exhibit "A".

In another Bit-Torrent case in Illinois, Judge Harold Baker writes in denying the motion for expedited discovery:

> Plainly stated, the Court is concerned that the expedited *ex parte* discovery is a fishing expedition by means of a perversion of the purpose of and intent of Fed.R.Civ.P. 23. VPR Internationale v. Does 1-1017, No. 2011 CV 2068 (C.D. Ill. April 29, 2011).

In the Northern District of California, these nearly identical Bit-Torrent cases have also been severed for improper joinder:

> Pacific Century International LTD v. Does 1-101, No. 2011 CV
>
> 2533; (severed Does 2-101);

4

<u>IO Group, Inc. v. Does 1-435</u>, No. 2010 CV 4382 (severed Does 2-435);

<u>Diabolic Video Productions, Inc. v. Does 1-2099</u>, No. 2010 CV 5865 (severed Does 2-2099); and

<u>New Sensations, Inc. v. Does 1-1768</u>, No. 2010 CV 5864 (severed Does 2-1768).

In yet another nearly identical Bit-Torrent case, filed in the Northern District of California, <u>Millenium TGA, Inc. v. Does 1-21</u>, No. 2011 CV 2258, Judge Samuel Conti found the same joinder problems and wrote in his order denying a request for leave to take early discovery: "This Court does not issue fishing licenses."

In this case, Plaintiff is attempting to improperly join numerous individuals in a single action. Courts have regularly questioned the propriety of joinder in other file-sharing cases brought against multiple Doe Defendants. The Court in <u>Arista Records, LLC</u>, 589 F.Supp.2d 154 (D. Conn. 2008) states as follows:

> It appears that the majority of District Courts who have addressed the issue of joinder and were faced with the same allegations to connect Doe Defendants in other music downloading lawsuits have concluded that those allegations were insufficient to satisfy the transactional requirement of Fed.R.Civ.P. 20(a)(2) and that joinder was therefore improper.

Clearly, the Plaintiff's joinder of 49 Doe Defendants in this single action is improper and runs the tremendous risk of creating unfairness and denying individual justice to those sued.

In this case, the IP addresses at issue show that the purported "coordinated activity" happened during a time period ranging from June 6, 2012 to August 4, 2012 and among 49 purported infringers. It is beyond logic how 49 Doe Defendants located in various geographical areas, over a period of approximately 60 days, with purported infringements at all hours of the day and night, somehow acted in concert. This is clearly an unsubstantiated allegation to bolster an ill-considered lawsuit and improper subpoena that is merely trying to use the Court's discovery rules to get a list of individuals from whom the Plaintiff can attempt to exploit a settlement under the threat and stigma of having (allegedly) downloaded an adult movie. The alleged pattern of usage does <u>not</u> amount to the same transaction, occurrence, or series of transactions or occurrences for purposes of Rule 20.

Moreover, joinder based on separate but similar behavior by individuals allegedly using the internet to commit copyright infringement has already been rejected by Courts across the country. For example, <u>LaFace Records, LLC v. Does 1-38</u>, No. 2007 CV 298, 2008 WL 544992 (E.D.N.Y. February 27, 2008) (the Court ordered severance of lawsuit against thirty eight (38) Doe Defendants where each Defendant used the same internet service provider as well as some of the same peer-to-peer networks); <u>BMG Music v. Does 1-4</u>, No. 2006 CV 1579, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. July 31, 2006) (the Court *sua sponte* severed multiple defendants in an action where the only connection between them was the allegation that they used the same internet service provider); <u>Interscope Records v. Does 1-25</u>, No. 2004 CV 197, 2004 U.S.

Dist. LEXIS 27782 (M.D. Fla. April 1, 2004) (Magistrate recommended *sua sponte* severance of multiple defendants in action where only connection between them was allegation they used the same internet service provider and peer-to-peer network); <u>BMG Music v. Does 1-203</u>, No. 04-650, 2004 WL 953888 (E.D. Pa. April 2, 2004) (severing lawsuit involving 203 defendants); <u>BoyRacer, Inc. v. Does 1-60</u>, No. 11 CV 1738 (N.D. Cal. August 19, 2011) (finding misjoinder where the plaintiff did not plead any facts showing any particular defendant illegally shared the plaintiff's work with any other particular defendant).

An IP account holder cannot be held liable simply by the fact that his internet access was identified in connection with the alleged infringing download.  This being so, where a Doe Defendant had neither intent nor knowledge of the passage of the infringing material through his internet access, no liability can attach to him merely as the account holder of such internet access.  <u>Perfect 10, Inc. v. Cybernet Ventures, Inc.</u>, 213 F.Supp.2d 1146 (C.D. Cal. 2002).   If the mere act of having an internet address can link a subscriber to copyright infringement suits, internet subscribers (like these Doe Defendants) will face untold reputational injury, embarrassment, and harassment.  Moreover, the information linked to an IP address does not provide the identity of the infringer and accordingly the Subpoena seeks information that is not discoverable or relevant.

In <u>K-Beech, Inc. v. Does 1-57</u>, No. 2011-469, 2011 WL 5597303 (M.D. Fla. November 1, 2011), the Court held:

The Court also finds that the Plaintiff should be required to show cause why certain conduct does not violate Rule 11 of the Federal Rules of Civil Procedure...The Plaintiffs sought, and the Court granted, expedited discovery allowing the plaintiffs to subpoena information from ISPs to identify the Doe defendants. [T]he plaintiffs then contacted the John Does, alerting them to this lawsuit and their potential liability. Some defendants have indicated that the plaintiff has contacted them directly...demand [thousands of dollars] in compensation to end the litigation...This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs' conduct in these cases indicates an improper use for the suits. In addition, the joinder of unrelated defendants does not seem to be warranted by existing law or a non-frivolous extension of existing law.

The conduct in the <u>K-Beech</u> matter is exactly the conduct occurring here. Disclosure under such subpoenas almost always results in the consummation of "settlements", many of which are paid by people who did not actually download plaintiffs' adult movies, but who do not wish to incur the expense, uncertainty and potential embarrassment of defending themselves. As Judge Wright (who was assigned to a Malibu Media case in the Central District of California), noted: "The Federal Courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial. <u>Malibu Media, LLC v. John Does 1-10</u>, No. 2012 CV 3635 (C.D. Cal. June 27, 2012).

## THE SUBPOENA SHOULD BE QUASHED

Under Rule 45(c)(3), the Court should quash or modify a subpoena to a non-party witness that "subjects a person to undue burden". Fed.R.Civ.P. 45(c)(3)(A)(iv). When determining if a burden is undue, the Court must

8

ascertain whether "the burden of compliance with the subpoena would exceed the benefits of production of the material sought". <u>Northwest Memorial Hospital v. Ashcroft</u>, 362 F.3d 923 (7th Cir. 2004). When making that inquiry, the Court should consider the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. <u>Williams v. Blagojevich</u>, No. 05 C 4673, 2008 WL 68680 (N.D. Ill. Jan 2, 2008) (quoting <u>Simon Property Group, L.P. v. mySimon, Inc.</u>, 194 F.R.D. 639 (S.D. Ind. 2000).

The producers and purveyors of pornographic movies have been particularly aggressive and are using early discovery and Rule 45 subpoenas as an abusive tactic, and as a way to coerce settlements from IP subscribers (and perhaps as a model for a new business venture). In fact, Malibu Media, LLC has as of October 24, 2012, filed 356 cases and 2 appeals across the country, according to a Pacer search for "Malibu Media". <u>See</u>, search results attached as Exhibit "B".

The Court in <u>MCGIP, LLC v. Doe</u>, No. 11 C 2331, 2011 WL 4352110 (N.D. Cal. September 16, 2011). described such Plaintiff's litigation tactics as follows:

> (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle. Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements – a tool whose efficiency is largely derived from the

plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers.

Here, the Plaintiffs are attempting to justify the scope of the subpoenas by alleging some type of a scheme or conspiracy that would allow the procurement of the requested information. The Plaintiff is attempting to avoid all personal jurisdiction and joinder hurdles, and yet obtain the identifying information connected with dozens of IP address through a single lawsuit. (Of course, bringing suit against the individual Doe Defendants is not a part of the Plaintiff's model, because the Plaintiff intends to use the identifying information to leverage and coerce a settlement without actually filing suit. (See, Digiprotect USA Corp., 2011 WL 1466073). (See also, Malibu Media, LLC v. John Does 1-36, No. 2012 CV 1370 (S.D. Cal.) (Declaration of Attorney Morgan Pietz). As of September 30, 2012, an attorney, Morgan Pietz, reported to a California District Court that out of the thousands of subpoenaed IP subscribers, Malibu has only filed suit against four (4) Defendants.

When evaluating the merits of a subpoena and the relevancy of the request, "a Court is not required to blind itself to the purpose for which a party seeks information". Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978). The Plaintiff should not be allowed to exploit the Court and its discovery procedures as a way to procure information about IP subscribers so it can then subsequently attempt to coerce a settlement with its "settlement negotiators" without ever intending to file suit.

The Plaintiff also ignores the fact that "IP subscribers are not necessarily copyright infringers." <u>VPR Internationale v. Does 1-1017</u>, 2011 U.S. Dist. LEXIS 64656 (C.D. Ill. April 29, 2011). The <u>VPR Internationale</u> Court (Judge Harold Baker) explains that while "an IP address might actually identify an individual subscriber and address, <u>the correlation is still far from perfect</u>…the infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." <u>Id.</u> Requesting subscriber information that may or may not be the alleged copyright infringer annoys the non-infringer and almost certainly leads to attorneys' fees and costs, regardless of whether the subscriber infringed the work. In addition, the request burdens a third party ISP with a request for information about an act that may or may not be actionable against any particular Doe Defendant.

The release of IP subscriber information will inevitably lead to relentless demand letters sent to the Doe Defendants, which regularly allege copyright infringement and demand substantial cash payments to avoid further litigation. (The latest extortion scheme and business enterprise of this Plaintiff and other producers and purveyors of pornography.) The Plaintiff should not be provided with the requested information or a license by the Court to engage in such tactics and coercion. Respectfully, the Subpoena referencing Doe Defendant No. 35 should be quashed.

## **CONCLUSION**

Accordingly, Doe Defendant No. 35 respectfully requests this Court grant the Motion to Sever and Dismiss and Motion to Quash the Outstanding Subpoena and provide the following relief:

(1)     Sever and dismiss Doe Defendant No. 35 predicated on the improper joinder of the 49 Doe Defendants;

(2)     Quash the outstanding subpoena served on Comcast as to Doe Defendant No. 35;

(3)     For any other relief the Court deems just and proper.


Respectfully Submitted,


/s/     Alan Garrow         .
Attorney for John Doe No. 35




Alan L. Garrow
Nealis & Garrow, P.C.
510 S. Batavia Avenue
Batavia, IL  60510
630-879-1213