**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 1:12-cv-06676 |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOES 1-49, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO QUASH**
**SUBPOENA AND VACATE ORDER GRANTING PLAINTIFF LEAVE TO SERVE**
**THIRD PARTY SUBPOENAS [DKT. 12]**

## I. INTRODUCTION

Plaintiff respectfully requests this Court deny the subject motion because joinder is proper and Defendant has not provided a valid reason to quash the subpoena. Plaintiff Malibu Media, LLC is a movie studio that expends significant time and resources producing adult entertainment content. Plaintiff suffers upwards of 60,000 unauthorized and illegal downloads per month on the internet. Despite daily monitoring of infringing activity and sending thousands of Digital Millennium Copyright Act ("DMCA") takedown notices a week, the infringement numbers do not change. In an effort to create a serious deterrent and at the same time be made whole for the losses it experiences daily, Plaintiff must initiate these types of lawsuits. "The work may or may not be pornographic, but [Plaintiff] has alleged that it owns the copyright to the Work and, if so, is entitled to the same protections as the owners of any other copyrighted work." Patrick Collins, Inc. v. John Does 1-9, No. 12-CV-3161 (C.D. Ill. Sept. 18, 2012) (DKT. #7).

This Court has previously issued six opinions addressing the same issues in BitTorrent copyright infringement actions holding that similar motions should be denied because joinder is proper at this stage of the litigation proceedings. Courts across the country have held the same. See Exhibit A. Although Defendant's motion spends a significant amount of time decrying Plaintiff's efforts to protect its copyrights, Plaintiff's suits are proper. "While we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored."[1] Plaintiff has suffered great harm due to infringements committed by thousands of residents in this District and has no option but to file these suits to prevent the further widespread theft of its copyright. Accordingly, this Court should deny the subject motion.

## II.  **JOINDER IS PROPER**

Fed.R.Civ.P. 20(a) permits joinder when: (1) there is the "same transaction or occurrence" or (2) a "series of transactions or occurrences" or (3) claims upon which the plaintiff asserts the right to relief jointly or "severally" against the defendants. Rule 20(a) not only permits permissive joinder when there is the same transaction or occurrence, it also permits joinder when a Plaintiff has pled (a) "series of transactions or occurrences" or (b) joint or several liability. Plaintiff has done both here.

"'With the advent of industrialization, high-speed transportation, and urbanization, more intricate disputes appeared with greater frequency,' requiring greater use of the more liberal joinder procedures." Ginett v. Computer Task Group, Inc., 962 F.2d 1085, 1094 (2d Cir. 1992) (quoting 6A Wright, Miller & Kane § 1581). "Here, the nature of the technology compels the

---

[1] Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary 108th Cong. (2003) available at http://www.copyright.gov/docs/regstat090903.html

conclusion that defendants' alleged transactions were part of the same "series of transactions or occurrences." Accordingly, we find that the Rule 20(a)(2) criteria for joinder are satisfied." Malibu Media, LLC v. John Does 1-5, 12 CIV. 2954 NRB, 2012 WL 3641291 (S.D.N.Y. Aug. 24, 2012) (memorandum and order denying motion to sever and dismiss) (internal citation omitted).

### A. The Infringement Occurred Through a Series of Transactions

Under Fed. R. Civ. P. 20(a) "series" has been interpreted by Circuit Courts to mean a "logically related" fact pattern.

> [A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974).

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different but for each of the Defendants' infringements.

### i. Here, Plaintiff Properly Pled a Series of Transactions

Plaintiff alleges that its investigator, IPP Limited, was able to receive a piece of Plaintiff's copyrighted movie from each Defendant. In order for Plaintiff's investigator to have received this piece, each alleged infringer must have had part of Plaintiff's movie on his or her computer and allowed others to download it.

There are four possible ways that each Defendant may have received the piece of the movie that was sent to IPP Limited. First, the Defendant may have directly connected with the initial seeder and downloaded a piece of the file directly from the initial seeder's computer. Second, the Defendant may have directly connected to and received a piece of the movie from a seeder who downloaded the movie from the initial seeder or other infringers. Third, the Defendant may have connected to or received a piece of the movie from other Defendants that received the movie from the initial seeder or other infringers. Fourth, the Defendant may have connected to or received a piece of the movie from other infringers who downloaded from other Defendants, other infringers, other seeders, or the initial seeder.

"In other words . . . at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP." Patrick Collins, Inc. v. John Does 1-21, 2012 WL 1190840, at *5 (E.D. Mich. Apr. 5, 2012). Each defendant participated in the same series of transactions. These transactions are all reasonably related, not just because Defendants used BitTorrent, but also because Defendants utilized the computers of others to download the same file, and allowed others to access their computer to receive it.

### ii. The Supreme Court Allows Joinder When the Defendants Do Not Directly Interact With Each Other

In United States v. Mississippi, 380 U.S. 128 (1965) the Supreme Court found that the joinder of six defendants, election registrars of six different counties, was proper because the allegations were all based on the same state-wide system designed to enforce the voter registration laws in a way that would deprive African Americans of the right to vote. Although the complaint did not allege that the registrars directly interacted with each other, or even that they knew of each other's actions, or that each other's actions directly affected each other in any

4

way, the Supreme Court interpreted Rule 20 to hold a right to relief severally because the series

of transactions were related and contained a common law and fact. Id. at 142-143.

> [T]he complaint charged that the registrars had acted and were continuing to act
> as part of a state-wide system designed to enforce the registration laws in a way
> that would inevitably deprive colored people of the right to vote solely because of
> their color. On such an allegation the joinder of all the registrars as defendants in
> a single suit is authorized by Rule 20(a) of the Federal Rules of Civil Procedure.

Id. at 142. Indeed, the Supreme Court held all of the defendants were joined properly because

they were all acting on the basis of the same system which created a transactional relatedness.

Likewise, in the case at hand, it is not necessary for each of the Defendants to have

directly interacted with each other Defendant, or have shared a piece of the file with each and

every Defendant when downloading the movie. The defendants are properly joined because their

actions directly relate back to the same initial seed of the swarm, and their alleged infringement

further advances the series of infringements that began with that initial seed and continued

through other infringers. The Defendants all acted under the same exact system. Just as it was

not alleged in United States v. Mississippi that the registrars shared with each other their efforts

to prevent African Americans from voting, it is not necessary for the Defendants to have shared

the pieces of the movie with each other. It is sufficient that the Defendants shared pieces that

originated from the same exact file, and opened their computer to allow others to connect and

receive these pieces.

### B. The Time Period For Infringement

The nature of the BitTorrent protocol provides for continuous seeding and distributing of

the movie long after it has downloaded. Without stopping the program by physically un-

checking the automatic seeding, an alleged infringer likely will seed and distribute a movie for

an extended period of time. Even after an infringer has completed a download of the movie, he or she may distribute the movie for weeks after having received the download.

> [I]t is not that an infringer would wait six weeks to receive the Movie, it is that <u>the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks</u>. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is <u>not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later. This consideration, however, is irrelevant since concerted action is not required for joinder.</u>

<u>Patrick Collins, Inc. v. John Does 1-21</u>, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012) (emphasis added). Here, Plaintiff's investigator received a piece of the movie from the defendants when they were allegedly distributing it to others.

"While the period at issue may . . . appear protracted by ordinary standards, the doctrine of joinder must be able to adapt to the technologies of our time." <u>Malibu Media, LLC v. John Does 1-5</u>, 12 CIV. 2954 NRB, 2012 WL 3641291 (S.D.N.Y. Aug. 24, 2012). Time constraints should not impact that the infringements occurred through a series of transactions. "[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm." <u>Patrick Collins, Inc. v. John Does 1-21</u>, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012.)

### C. <u>There Are Common Issues of Fact and Law</u>

<u>Rule 20(a)(2)(B)</u> requires the plaintiffs' claims against the putative defendants to contain a common question of law or fact. "[T]he suit involves questions of law and fact that are common to all defendants. Plaintiff's complaint singles out several legal questions underlying the claims against each defendant." <u>First Time Videos, LLC v. Does 1-76</u>, 276 F.R.D. 254, 257

(N.D. Ill. 2011). See also Nu Image, Inc. v. Does 1-3, 932, 2:11-CV-545-FTM-29, 2012 WL 1255189 (M.D. Fla. Apr. 12, 2012) ("The Plaintiff meets this requirement. In each case, the Plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders."); Call of the Wild Movie v. Does 1-1,062, 770 F. Supp. 2d 332, 343 (D.D.C. 2011) ("The factual issues related to how BitTorrent works and the methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative defendant.")

### D. **Joinder Promotes Judicial Efficiency and is Beneficial to Putative Defendant**

Joinder of the Defendants creates judicial efficiency, particularly at this stage of the litigation process and is beneficial to the Doe Defendants. "[Defendant] . . . asks the Court to exercise its discretion to sever the cases because joinder does not promote judicial economy. The . . . Alleged IP Addresses all are located in this District. Joinder at the discovery phase would be more efficient than conducting the same discovery in . . . separate cases." Patrick Collins, Inc. v. John Does 1-9, 3:12-cv-03161-RM-BGC, DKT. #7 (C.D. Ill. Sept. 18, 2012). See also Patrick Collins, Inc. v. John Does 1-33, 11-CV-02163-CMA-MJW, 2012 WL 415424 (D. Colo. Feb. 8, 2012) ("The Court finds that joinder, at this stage of the litigation, will not prejudice any party and will promote judicial efficiency"); Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239 at FN 6 (S.D.N.Y. 2012) ("[C]ourts have opined that requiring aggrieved parties to file hundreds or even thousands of separate copyright infringement actions would neither be cost efficient for the plaintiffs nor promote convenience or judicial economy for the courts.")

Although Doe Defendants may later assert different factual and legal defenses, this does not defeat the propriety of joinder at this stage of the litigation. "The Court recognizes that each

Doe Defendant may later present different factual circumstances to support individual legal defenses. Prospective factual distinctions, however, will not defeat the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B) at this stage in the litigation." First Time Videos, LLC v. Does 1-500, 276 F.R.D. 241, 252 (N.D. Ill. 2011). See also K-Beech Inc., v. John Does 1-57, Case 2:11-cv-00358-CEH-SPC, at *12 (M.D. Fla. 2011) (same); Patrick Collins, Inc. v. John Does 1-15, 11-CV-02164-CMA-MJW, 2012 WL 415436 (D. Colo. Feb. 8, 2012) (same) (quoting Call of the Wild Movie, 770 F.Supp.2d at 343).

### E. The Cases Relied Upon by Defendant Have Been Distinguished in Such a Way as Would Make Joinder Proper Here

Defendant cites various cases in an effort to avoid joinder. Some of the cases cited by Defendant have hundreds, if not thousands, of defendants joined together in. See On The Cheap, LLC v. Does 1-5,011, 2011 WL 4018258 (N.D. Cal. Sept. 6, 2011) (5,011 defendants); see also MGCIP v. Does 1-149, 2011 U.S. Dist. LEXIS 108109 (N.D. Cal. Sept. 16, 2011) (3,036 defendants). In these cases the courts faced substantially different procedural problems than the joining of many fewer defendants, as here.

Defendant also relies on Hard Drive Prods v. Does 1-188, 2011 U.S. Dist. LEXIS 14123 (N.D. Cal. Feb 3, 2011). Courts have expressly distinguished Hard Drive Prods, holding joinder is proper in cases just like this one, where all of the Defendants participated in the same BitTorrent swarm. See Liberty Media Holdings, LLC v. Does 1-62, 2012 WL 628309. *7 (S.D. Cal. Feb. 24, 2012).

> Here, unlike *Hard Drive Prods.,* where it was unclear whether all one hundred and eighty eight doe defendants were part of the same "swarm," Plaintiff alleges all Defendants participated in the same "swarm" and all of the IP addresses identified downloaded and shared the same unique "hash" (a file identifier) [Compl, ¶ 3.] This allegation supports Plaintiff's claim that Doe Defendants "collectively" infringed on Plaintiff's copyright.

*Id.* (Emphasis added). Just like in <u>Liberty Media</u>, Plaintiff has alleged all Defendants participated in the same "swarm" and all of the IP addresses identified downloaded and shared the same unique "hash."

### III. THIS COURT SHOULD NOT QUASH THE SUBPOENA

Rule 45(c)(3) provides that a court must modify or quash a subpoena that fails to allow a reasonable time to comply; requires a non-party to travel more than 100 miles (except for trial within the state); requires disclosure of privileged materials; or, subjects a person to undue burden. <u>See</u> Fed. R. Civ. P. 45(c)(3)(A)(i-iv). The Rule also provides for circumstances in which a court may modify or quash a subpoena. These circumstances are when the subpoena requires disclosure of trade secrets; disclosure of certain expert opinions; or, requires a nonparty to incur substantial expense to travel more than 100 miles to attend a trial. <u>See</u> Fed. R. Civ. P. 45(c)(3)(B)(i-iii).

Although Defendant argues in passing that the subpoena should be quashed on the basis of "undue burden," as a third-party to the subpoena, Defendant lacks standing to assert such argument. Doe 1 "is not faced with an undue burden because the subpoena is directed at the internet service provider and not the Defendant." <u>Malibu Media, LLC v. John Does 1-15</u>, CIV.A. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012). <u>See also</u> <u>Call of the Wild Movie, LLC v. Smith</u>, 274 F.R.D. 334, 338 (D.D.C. 2011); <u>W. Coast Productions, Inc. v. Does 1-5829</u>, 275 F.R.D. 9, 16 (D.D.C. 2011). Defendant has failed to demonstrate any of the requirements of Rule 45(c)(3) arguing instead that using an IP address to identify an infringer is improper. This argument is incorrect and also does not satisfy Rule 45. Taken to its logical conclusion, this argument would eviscerate a copyright holder's ability to sue for infringement over the internet.

A. **Plaintiff Has No Other Way to Pursue Infringers**

This Court has previously determined that Plaintiff established good cause to issue a Rule 45 subpoena on Defendant's ISP and granted Plaintiff limited discovery because Plaintiff has no other way to identify the Defendants and proceed with its copyright infringement case against them. "Because of the very nature of internet infringement, it is often the case that a plaintiff cannot identify an infringer in any way other than by IP number. Given the substantial federal policy underlying copyright law, it would be a travesty to let technology overtake the legal protection of that policy." Malibu Media, LLC v. John Does 1-34, 1:12-cv-01188-JES-JAG, (C.D. Ill. Aug. 1, 2012) Order DE #6.

Both the Second and Eighth Circuits, the only circuits to rule on the issue, have approved the use of Rule 45 subpoenas in on-line infringement cases to identify anonymous Doe Defendants. In Arista Records, LLC. v. Doe 3, 604 F.3d 110 (2d Cir. 2010) the Second Circuit upheld the District Court's denial of a motion to quash after Arista obtained leave "to serve a subpoena on defendants' common ISP, the State University of New York at Albany." By so holding, the Second Circuit approved the process of issuing a Rule 45 subpoena to an ISP to identify anonymous Doe Defendants. Similarly, the Eight Circuit held "organizations such as the RIAA can file a John Doe suit, along with a motion for third-party discovery of the identity of the otherwise anonymous 'John Doe' defendant." In re Charter Communications, Inc., Subpoena Enforcement Matter, 393 F.3d 771, FN3 (8th Cir. 2005).

Defendant relies on VPR Internationale v. Does 1-1017, 2:11-cv-02068, (C. Ill. April 29, 2011) to support his theory that Plaintiff's subpoena should be quashed. See Def's Mot. VPR Internationale involved 1,017 defendants grouped into one case, and lacked proper personal jurisdiction and venue. "VPR Internationale did not allege that any of the 1,017 IP addresses had

been used to upload or download the same unique copy of . . . [the] works." Patrick Collins, Inc. v. John Does 1-9, No. 12-CV-3161 (C.D. Ill. Sept. 18, 2012). VPR Internationale also failed to identify "even one IP address that was used within the District to infringe on one of its copyrights." Id. Thus in that case, "the request for authority to issue subpoenas . . . was little more than a fishing expedition and an abuse of the discovery process." This case does not suffer from the same procedural problems. Here there are fewer IP addresses, all of which have been "traced to addresses within this District," and all of which were "used to download and upload the same unique copy of the work." Id.

Even if Defendant is not the actual infringer but merely the subscriber of internet service, the infringer was another person who was using the Defendant's internet service. "Whether the individuals whose identities are sought by the subpoena are liable remains to be litigated and does not provide grounds upon which to quash the subpoena. The identi[t]y of individuals who may have violated the copyright is essential to resolving the copyright holder's claim." Third Degree Films, Inc. v. Does 1-2010, 4:11 MC 2, 2011 WL 4759283 (N.D. Ind. Oct. 6, 2011). Other courts have agreed, noting that "any concern about identifying a potentially innocent ISP customer, who happens to fall within the Plaintiff's discovery requests upon the ISPs, is minimal and not an issue that would warrant the Court to exercise its inherent power to govern these discovery matters by minimizing or prohibiting the otherwise legitimate, relevant, and probative discovery." Malibu Media, LLC v. John Does 1-9, 8:12-cv-669-T-23AEP, *5 (M.D. Fla. July 6, 2012). Still other courts agree.

> The Court acknowledges that Verizon's compliance with the subpoena may not directly reveal the identity of an infringer. Indeed, the subscriber information Verizon discloses will only reveal the account holder's information, and it may be that a third party used that subscriber's IP address to commit the infringement alleged in this case.

Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012) (Internal citations omitted). The Court went on to note that while the IP address did not guarantee the subscriber was the infringer, "[t]he subpoena is specific enough to give rise to a reasonable likelihood that information facilitating service upon proper defendants will be disclosed if the ISPs comply." Id. Furthermore, "[t]he customers may know who used the Alleged IP Address at issue or whether some spoofing occurred. The identity of the customer is also likely to lead to any neighbor or other person who may have illegally connected to the customer's wireless technology. The subpoenas . . . are a proper use of discovery." Patrick Collins, Inc. v. John Does 1-9, No. 12-CV-3161 (C.D. Ill. Sept. 18, 2012).

While, as Defendant suggests, this process may not be 100% accurate, it is the most accurate and likely way to identify the person responsible for the use of that IP address. Indeed, it is the only way to enforce one's copyrights against online infringement. Without this ability, copyright owners would have a right without a remedy. Any such state of affairs would violate Chief Justice Marshall's often cited rule that "the very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he received an injury." Marbury v. Madison, 1 Cranch 137, 1803 WL 893, *17 (U.S. 1803).

### B. **Plaintiff Does Not Issue Demand Letters**

Defendant's argument that the subpoena should be quashed because if it is not, Plaintiff will annoy and harass Defendant with "a flurry of demand letters" is without merit. Plaintiff has never issued demand letters to any defendant in any case. Although Defendant attempts to question Plaintiff's settlements with Defendants, such settlements are proper. Regardless of whether Plaintiff settles a case or decides that pursuing the claims against a particular Defendant is no longer feasible, "[e]ither course selected by the Plaintiff would give the copyright owner

the opportunity to effectuate its statutorily protected rights and thereby serve our system of justice." AF Holdings, LLC v. Does 1-1,058, CIV.A. 12-0048 BAH, 2012 WL 3204917 at *17 (D.D.C. Aug. 6, 2012).

> At this stage, the plaintiff is attempting to identify those infringing its copyright so that it may investigate the feasibility of proceeding in lawsuits against them. That the plaintiff chooses, after obtaining identifying information, to pursue settlement or to drop its claims altogether is of no consequence to the Court. The plaintiff . . . has a right to name or decline to assert claims against defendants whose identities and other relevant circumstances become known to the plaintiff.

Id. at *14. (Emphasis added.)

Defendant mischaracterizes Plaintiff's purpose for engaging in settlement activities, suggesting that simply the fact that a Defendant named in litigation may be offered a settlement constitutes improper litigation tactics. This is incorrect. Prior to actually proceeding against defendants, it is proper to contact them to discuss settlement options. The only difference between this case and the countless others filed every day by other plaintiffs in a broad array of civil litigation is that the Plaintiff does not have the ability to identify the defendants before the suit is filed.

> [T]he John Doe Defendants' argument is misguided in that this type of case creates special circumstances that would require judicial review of any motivation to settle, and the Court is not inclined to create a special proceeding to inform any particular John Doe Defendant of a right which is obviously commonly known, i.e. his or her right to defend and litigate this lawsuit.

Malibu Media, LLC v. John Does 1-9, 8:12-cv-669-T-23AEP, *7 (M.D. Fla. July 6, 2012)

The Supreme Court has stated that public policy favors resolutions through settlement. "Rule 68's policy of encouraging settlements is neutral, favoring neither plaintiffs nor defendants; it expresses a clear policy of favoring settlement of all lawsuits." Marek v. Chesny 473 U.S. 1, 11 (1985). Further, Plaintiff has a First Amendment right under the petition clause to make the demand. See Sosa v. DirectTV, 437 F. 3d 923, 937 (9th Cir. 2006) (holding "the

protections of the Petition Clause extend to settlement demands as a class," including those made during and prior to a suit.)

### C. **Plaintiff is Entitled to Recover Statutory Damages if it Elects to Do So**

Doe 1 incorrectly argues that because Plaintiff obtained its copyright registration after Doe 1's infringement, Plaintiff is not entitled to recovery of statutory damages or attorneys' fees. "To establish copyright infringement, [all that one must prove is] ownership of [a] valid copyright and copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Telephone Services, Co., Inc., 111 S.Ct. 1282, 1296 (1991). "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate." See 17 U.S.C. §§410(c). Plaintiff's copyrights are valid and Plaintiff's well-pled complaint properly alleged that Doe 1 copied constituent elements of the work that are original. See Complaint at ¶ 47.

Further, Plaintiff is able to recover statutory damages for copyright infringement from Doe 1 because Plaintiff's work was registered within three months of publication as required by the statute. See 17 U.S.C. § 412(2) and 17 U.S.C. § 504. "Section 412(2) provides a three-month grace period within which to register the work from the date of first publication and still collect statutory damages and attorney's fees." 6 Patry on Copyright § 22:202. "[F]ull remedies could be recovered for any infringement begun during the three months after publication if registration is made before that period has ended. This exception is needed to take care of newsworthy or suddenly popular works which may be infringed almost as soon as they are published, before the copyright owner has had a reasonable opportunity to register his claim." Singh v. Famous Overseas, Inc., 680 F. Supp. 533, 536 (E.D.N.Y. 1988). Plaintiff's work was

first published in June of 2012 and it was registered within the same month. Accordingly, Defendant's argument fails.

## IV.     PLAINTIFF OBJECTS TO A BLANKET PROTECTIVE ORDER

Rule 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This Court previously granted Plaintiff leave to subpoena Defendant's ISP finding that Plaintiff had established good cause. To issue a protective order preventing the disclosure of the subpoenaed information would completely negate the Court's prior correct order. Such a broad protective order is unwarranted and Plaintiff objects to the Court taking such action.

However, "it is within the discretion of the district court to grant [the defendant] the 'rare dispensation' of anonymity against the world (but not the plaintiff)." Sunlust Pictures, LLC v. Does 1-75, 12 C 1546, 2012 WL 3717768 (N.D. Ill. Aug. 27, 2012) (quoting United States v. Microsoft Corp., 56 F.3d 1448, 1464 (D.C.Cir.1995)) Therefore, to allay Doe 1's concern about embarrassment and reputational injury, Plaintiff does not object to filing Doe 1's information under seal and allowing him to remain anonymous through the end of discovery, so long as Plaintiff is not prevented from conducting discovery in an orderly and efficient manner.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the subject motion.

Dated: November 16, 2012

Respectfully submitted,


NICOLETTI & ASSOCIATES, PLLC

By:    */s/ Paul J. Nicoletti*
Paul J. Nicoletti, Esq. (P44419)
36880 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel:  (248) 203-7800
Fax:  (248) 203-7801
E-Fax: (248) 928-7051
Email:  paul@nicoletti-associates.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that on November 16, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:    */s/ Paul J. Nicoletti*