**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 1:12-cv-06676 |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOES 1-49, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO JOHN DOE NO. 35'S**
**MOTION TO SEVER AND DISMISS AND MOTION TO**
**QUASH THE OUTSTANDING SUBPOENA [DKT. 16]**

I.     **INTRODUCTION**

Plaintiff respectfully requests this Court deny the subject motion because joinder is proper and Defendant has not provided a valid reason to quash the subpoena. Plaintiff Malibu Media, LLC is a movie studio that expends significant time and resources producing adult entertainment content. Plaintiff suffers upwards of 60,000 unauthorized and illegal downloads per month on the internet. Despite daily monitoring of infringing activity and sending thousands of Digital Millennium Copyright Act ("DMCA") takedown notices a week, the infringement numbers do not change. In an effort to create a serious deterrent and at the same time be made whole for the losses it experiences daily, Plaintiff has no other choice but to file lawsuits against the numerous infringers who unlawfully infringe upon Plaintiff's rights. "The work may or may not be pornographic, but [Plaintiff] has alleged that it owns the copyright to the Work and, if so, is entitled to the same protections as the owners of any other copyrighted work." Patrick Collins, Inc. v. John Does 1-9, No. 12-CV-3161 (C.D. Ill. Sept. 18, 2012) (DKT. #7).

Courts across the country have held joinder proper in copyright infringement BitTorrent actions. <u>See</u> Exhibit A. Indeed, this Court has previously issued six opinions addressing the same issues in BitTorrent copyright infringement actions holding that similar motions should be denied because joinder is proper at this stage of the litigation proceedings. <u>See</u> <u>First Time Videos, LLC v. Does 1-76</u>, 276 F.R.D. 254, 257 (N.D. Ill. 2011) ("At this stage, joinder is appropriate."); <u>First Time Videos, LLC v. Does 1-500</u>, 276 F.R.D. 241, 252 (N.D. Ill. 2011) ("An examination of each of these requirements shows that joinder is proper at this time."); <u>MGCIP v. Does 1-316</u>, 10 C 6677, 2011 WL 2292958 (N.D. Ill. June 9, 2011) ("The Court also finds that the putative defendants's arguments that they were improperly joined are premature."); <u>Hard Drive Productions, Inc. v. Does 1-55</u>, 11 C 2798, 2011 WL 4889094 (N.D. Ill. Oct. 12, 2011) ("At this pleading stage, Hard Drive's allegation that Does 1–55 have infringed Hard Drive's copyright through BitTorrent—the nature of which necessitates a concerted action by many people in order to disseminate files—is sufficient to satisfy Rule 20(a)."); <u>Pac. Century Int'l v. Does 1-31</u>, 11 C 9064, 2012 WL 2129003 (N.D. Ill. June 12, 2012) ("at least at this stage, Plaintiff's allegations that the anonymous defendants participated in the same "swarm" (at varying times spanning just over one month) sufficiently alleges that they were involved in "a series of transactions" to warrant joinder under Rule 20."); <u>Sunlust Pictures, LLC v. Does 1-75</u>, 12 C 1546, 2012 WL 3717768 (N.D. Ill. Aug. 27, 2012) ("joinder is appropriate in this case because Sunlust has alleged sufficient facts to provide a basis for joinder of all of the defendants.")

Although Defendant's motion spends a significant amount of time decrying Plaintiff's efforts to protect its copyrights, Plaintiff's suits are proper. "While we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also

know that laws without penalties may be widely ignored."[1]  Plaintiff has suffered great harm due to infringements committed by thousands of residents in this District and has no option but to file these suits to prevent the further widespread theft of its copyright.   Accordingly, this Court should deny the subject motion.

## II.     <u>JOINDER IS PROPER</u>

Fed.R.Civ.P. 20(a) permits joinder when: (1) there is the "same transaction or occurrence" <u>or</u> (2) a "series of transactions or occurrences" <u>or</u> (3) claims upon which the plaintiff asserts the right to relief jointly or "severally" against the defendants.   Rule 20(a) not only permits permissive joinder when there is the same transaction or occurrence, it also permits joinder when a Plaintiff has pled (a) "series of transactions or occurrences" or (b) joint or several liability.   Plaintiff has done both here.

"'With the advent of industrialization, high-speed transportation, and urbanization, more intricate disputes appeared with greater frequency,' requiring greater use of the more liberal joinder procedures." <u>Ginett v. Computer Task Group, Inc.</u>, 962 F.2d 1085, 1094 (2d Cir. 1992) (<u>quoting</u> 6A Wright, Miller & Kane § 1581).   "Here, the nature of the technology compels the conclusion that defendants' alleged transactions were part of the same "series of transactions or occurrences."   Accordingly, we find that the Rule 20(a)(2) criteria for joinder are satisfied." <u>Malibu Media, LLC v. John Does 1-5</u>, 12 CIV. 2954 NRB, 2012 WL 3641291 (S.D.N.Y. Aug. 24, 2012) (memorandum and order denying motion to sever and dismiss) (internal citation omitted).

---

[1] <u>Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary</u> 108th Cong. (2003) <u>available at</u> http://www.copyright.gov/docs/regstat090903.html

**A.  The Infringement Occurred Through a Series of Transactions**

Under Fed. R. Civ. P. 20(a) "series" has been interpreted by Circuit Courts to mean a "logically related" fact pattern.

> [A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974).

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different but for each of the Defendants' infringements.

**i.  Here, Plaintiff Properly Pled a Series of Transactions**

Plaintiff alleges that its investigator, IPP Limited, was able to receive a piece of Plaintiff's copyrighted movie from each Defendant.  In order for Plaintiff's investigator to have received this piece, each alleged infringer must have had part of Plaintiff's movie on his or her computer and allowed others to download it.

There are four possible ways that each Defendant may have received the piece of the movie that was sent to IPP Limited.  First, the Defendant may have directly connected with the initial seeder and downloaded a piece of the file directly from the initial seeder's computer. Second, the Defendant may have directly connected to and received a piece of the movie from a seeder who downloaded the movie from the initial seeder or other infringers.  Third, the Defendant may have connected to or received a piece of the movie from other Defendants that

received the movie from the initial seeder or other infringers. Fourth, the Defendant may have connected to or received a piece of the movie from other infringers who downloaded from other Defendants, other infringers, other seeders, or the initial seeder.

"In other words . . . at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP." Patrick Collins, Inc. v. John Does 1-21, 2012 WL 1190840, at *5 (E.D. Mich. Apr. 5, 2012). Each defendant participated in the same series of transactions. These transactions are all reasonably related, not just because Defendants used BitTorrent, but also because Defendants utilized the computers of others to download the same file, and allowed others to access their computer to receive it.

### ii. The Supreme Court Allows Joinder When the Defendants Do Not Directly Interact With Each Other

In United States v. Mississippi, 380 U.S. 128 (1965) the Supreme Court found that the joinder of six defendants, election registrars of six different counties, was proper because the allegations were all based on the same state-wide system designed to enforce the voter registration laws in a way that would deprive African Americans of the right to vote. Although the complaint did not allege that the registrars directly interacted with each other, or even that they knew of each other's actions, or that each other's actions directly affected each other in any way, the Supreme Court interpreted Rule 20 to hold a right to relief severally because the series of transactions were related and contained a common law and fact. Id. at 142-143.

> [T]he complaint charged that the registrars had acted and were continuing to act as part of a state-wide system designed to enforce the registration laws in a way that would inevitably deprive colored people of the right to vote solely because of their color. On such an allegation the joinder of all the registrars as defendants in a single suit is authorized by Rule 20(a) of the Federal Rules of Civil Procedure.

Id. at 142.  Indeed, the Supreme Court held all of the defendants were joined properly because they were all acting on the basis of the same system which created a transactional relatedness.

Likewise, in the case at hand, it is not necessary for each of the Defendants to have directly interacted with each other Defendant, or have shared a piece of the file with each and every Defendant when downloading the movie.  The defendants are properly joined because their actions directly relate back to the same initial seed of the swarm, and their alleged infringement further advances the series of infringements that began with that initial seed and continued through other infringers.  The Defendants all acted under the same exact system.  Just as it was not alleged in United States v. Mississippi that the registrars shared with each other their efforts to prevent African Americans from voting, it is not necessary for the Defendants to have shared the pieces of the movie with each other.  It is sufficient that the Defendants shared pieces that originated from the same exact file, and opened their computer to allow others to connect and receive these pieces.

### B.  The Time Period For Infringement

The nature of the BitTorrent protocol provides for continuous seeding and distributing of the movie long after it has downloaded.  Without stopping the program by physically un-checking the automatic seeding, an alleged infringer likely will seed and distribute a movie for an extended period of time.  Even after an infringer has completed a download of the movie, he or she may distribute the movie for weeks after having received the download.

> [I]t is not that an infringer would wait six weeks to receive the Movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks

later. This consideration, however, is irrelevant since concerted action is not required for joinder.

Patrick Collins, Inc. v. John Does 1-21, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012) (emphasis added). Here, Plaintiff's investigator received a piece of the movie from the defendants when they were allegedly distributing it to others.

"While the period at issue may . . . appear protracted by ordinary standards, the doctrine of joinder must be able to adapt to the technologies of our time." Malibu Media, LLC v. John Does 1-5, 12 CIV. 2954 NRB, 2012 WL 3641291 (S.D.N.Y. Aug. 24, 2012). Time constraints should not impact that the infringements occurred through a series of transactions. "[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm." Patrick Collins, Inc. v. John Does 1-21, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012.)

### C. There Are Common Issues of Fact and Law

Rule 20(a)(2)(B) requires the plaintiffs' claims against the putative defendants to contain a common question of law or fact. "[T]he suit involves questions of law and fact that are common to all defendants. Plaintiff's complaint singles out several legal questions underlying the claims against each defendant." First Time Videos, LLC v. Does 1-76, 276 F.R.D. 254, 257 (N.D. Ill. 2011). See also Nu Image, Inc. v. Does 1-3, 932, 2:11-CV-545-FTM-29, 2012 WL 1255189 (M.D. Fla. Apr. 12, 2012) ("The Plaintiff meets this requirement. In each case, the Plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders."); Call of the Wild Movie v. Does 1-1,062, 770 F. Supp. 2d 332, 343 (D.D.C. 2011) ("The factual issues related to how BitTorrent works and the

7

methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative defendant.")

## D. <u>Joinder Promotes Judicial Efficiency and is Beneficial to Putative Defendant</u>

Joinder of the Defendants creates judicial efficiency, particularly at this stage of the litigation process and is beneficial to the Doe Defendants. "[Defendant] . . . asks the Court to exercise its discretion to sever the cases because joinder does not promote judicial economy. The . . . Alleged IP Addresses all are located in this District. Joinder at the discovery phase would be more efficient than conducting the same discovery in . . . separate cases." <u>Patrick Collins, Inc. v. John Does 1-9</u>, 3:12-cv-03161-RM-BGC, DKT. #7 (C.D. Ill. Sept. 18, 2012). <u>See also Patrick Collins, Inc. v. John Does 1-33</u>, 11-CV-02163-CMA-MJW, 2012 WL 415424 (D. Colo. Feb. 8, 2012) ("The Court finds that joinder, at this stage of the litigation, will not prejudice any party and will promote judicial efficiency"); <u>Digital Sin, Inc. v. Does 1-176</u>, 279 F.R.D. 239 at FN 6 (S.D.N.Y. 2012) ("[C]ourts have opined that requiring aggrieved parties to file hundreds or even thousands of separate copyright infringement actions would neither be cost efficient for the plaintiffs nor promote convenience or judicial economy for the courts.")

Although Doe Defendants may later assert different factual and legal defenses, this does not defeat the propriety of joinder at this stage of the litigation. "The Court recognizes that each Doe Defendant may later present different factual circumstances to support individual legal defenses. Prospective factual distinctions, however, will not defeat the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B) at this stage in the litigation." <u>First Time Videos, LLC v. Does 1-500</u>, 276 F.R.D. 241, 252 (N.D. Ill. 2011). <u>See also K-Beech Inc., v. John Does 1-57</u>, Case 2:11-cv-00358-CEH-SPC, at *12 (M.D. Fla. 2011) (same); <u>Patrick</u>

<u>Collins, Inc. v. John Does 1-15</u>, 11-CV-02164-CMA-MJW, 2012 WL 415436 (D. Colo. Feb. 8, 2012) (same) (quoting <u>Call of the Wild Movie,</u> 770 F.Supp.2d at 343)

### E. The Cases Relied Upon by Defendant Have Been Distinguished in Such a Way as Would Make Joinder Proper Here

Defendant cites various cases in an effort to avoid joinder. Some of the cases cited by Defendant, unlike this case, involve multiple Plaintiffs and infringement of multiple copyrights in the same lawsuit. <u>See</u> (1) <u>Interscope Records, et. al. v. Does 1-25</u>, 2004 U.S. Dist. LEXIS, Case No. 6:04-cv-197 – ACC- DAB (M.D. Fla. 2004), (16 Plaintiffs and dozens if not hundreds of songs, <u>see</u> the Complaint at ¶¶ 4-19 and Exhibit A to the Complaint); and (2) <u>BMG Music v. Does 1-203</u>, Case No. 2:04-cv-00650-CN (E.D.P.A. 2004) (17 Plaintiffs and numerous works, <u>see</u> the Complaint at ¶¶ 4-19 & 23). Since multiple works were at issue in these copyright cases, the Plaintiffs in those cases did not plead that the online infringements were part of the same transaction or series of transactions or that the defendants in those cases were contributorily liable for each others' infringement.

Defendant's citation to <u>LaFace Records v. Does 1-38,</u> 2008 WL 544992 (E.D.N.C. 2008) is also misplaced. <u>Def.'s Mot.</u> at p. 5. In <u>LaFace</u>, eleven recording studios sued over dozens of copyrights. The only commonality supporting joinder was that the Defendants used Gnutella, a peer-to-peer file sharing protocol. Significantly, Gnutella works through one peer to one peer transactions; i.e., a user connects to one computer and gets the whole file. Here, Plaintiff only sued on one copy of one movie which was broken up into pieces by BitTorrent. And, Plaintiff alleged that the Defendants were distributing the pieces to each other. Indeed, BitTorrent works differently than Gnutella insofar as it causes all participants in a swarm to upload pieces of the movie to each other. Consequently, here, Plaintiff pled that each of the Defendants is

contributorily liable for the infringement of each of the other Defendants. This is yet another basis to hold that joinder is proper.

### F. Defendant Attempts to Distract the Court by Wrongly Suggesting That Sanctions May Be Appropriate

Defendant relies heavily on the order issued by the Honorable Judge Gibney in the Eastern District of Virginia in attempting to distract the Court from the case at hand by suggesting that sanctions may be appropriate. See Def's Mot. 5 citing K-Beech Inc. v. John Does 1-85, Case 3:11-cv-00469-JAG (E.D. Va. 2011). Judge Gibney's decision was decided *sua sponte* without the plaintiff being afforded the opportunity to brief the issue. At the time this decision was made, the Honorable Judge Gibney was unaware of any of the myriad cases that hold joinder is proper, as evidenced by his finding pursuant to Rule 11 that "the joinder of unrelated defendants does not seem to be warranted by existing law." Id. at *5. Further, the plaintiff in that case demonstrated at the hearing on December 20th, 2011 that it had a proper purpose and the Honorable Judge Gibney ultimately ruled that there were no Rule 11 violations. Id. at Order December 20, 2011. Here, Plaintiff's purpose is plain and simple: to receive compensation for the mass theft of its property and deter future infringement. Plaintiff has not violated Rule 11 and sanctions are not warranted.

### III.    THIS COURT SHOULD NOT QUASH THE SUBPOENA

Rule 45(c)(3) provides that a court must modify or quash a subpoena that fails to allow a reasonable time to comply; requires a non-party to travel more than 100 miles (except for trial within the state); requires disclosure of privileged materials; or, subjects a person to undue burden. See Fed. R. Civ. P. 45(c)(3)(A)(i-iv). The Rule also provides for circumstances in which a court may modify or quash a subpoena. These circumstances are when the subpoena requires disclosure of trade secrets; disclosure of certain expert opinions; or, requires a nonparty

to incur substantial expense to travel more than 100 miles to attend a trial. See Fed. R. Civ. P. 45(c)(3)(B)(i-iii).

Although Defendant argues that the subpoena should be quashed on the basis of "undue burden," as a third-party to the subpoena, Defendant lacks standing to assert such argument. Doe 35 "is not faced with an undue burden because the subpoena is directed at the internet service provider and not the Defendant." Malibu Media, LLC v. John Does 1-15, CIV.A. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012). See also Call of the Wild Movie, LLC v. Smith, 274 F.R.D. 334, 338 (D.D.C. 2011); W. Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. 9, 16 (D.D.C. 2011). Defendant has failed to demonstrate any of the requirements of Rule 45(c)(3) arguing instead that using an IP address to identify an infringer is improper. This argument is incorrect and also does not satisfy Rule 45. Taken to its logical conclusion, this argument would eviscerate a copyright holder's ability to sue for infringement over the internet.

### A. Plaintiff Has No Other Way to Pursue Infringers

This Court has previously determined that Plaintiff established good cause to issue a Rule 45 subpoena on Defendant's ISP and granted Plaintiff limited discovery because Plaintiff has no other way to identify the Defendants and proceed with its copyright infringement case against them. "Because of the very nature of internet infringement, it is often the case that a plaintiff cannot identify an infringer in any way other than by IP number. Given the substantial federal policy underlying copyright law, it would be a travesty to let technology overtake the legal protection of that policy." Malibu Media, LLC v. John Does 1-34, 1:12-cv-01188-JES-JAG, (C.D. Ill. Aug. 1, 2012) Order DE #6.

Both the Second and Eighth Circuits, the only circuits to rule on the issue, have approved the use of Rule 45 subpoenas in on-line infringement cases to identify anonymous Doe

Defendants.  In <u>Arista Records, LLC. v. Doe 3</u>, 604 F.3d 110 (2d Cir. 2010) the Second Circuit upheld the District Court's denial of a motion to quash after Arista obtained leave "to serve a subpoena on defendants' common ISP, the State University of New York at Albany."  By so holding, the Second Circuit approved the process of issuing a Rule 45 subpoena to an ISP to identify anonymous Doe Defendants.  Similarly, the Eight Circuit held "organizations such as the RIAA can file a John Doe suit, along with a motion for third-party discovery of the identity of the otherwise anonymous 'John Doe' defendant."  <u>In re Charter Communications, Inc., Subpoena Enforcement Matter</u>, 393 F.3d 771, FN3 (8th Cir. 2005).

Defendant relies on <u>VPR Internationale v. Does 1-1017</u>, 2:11-cv-02068, (C. Ill. April 29, 2011) to support his theory that Plaintiff has not established good cause to subpoena Defendant's ISP.  <u>See</u> Def's Mot.  <u>VPR Internationale</u> involved 1,017 defendants grouped into one case, and lacked proper personal jurisdiction and venue. "VPR Internationale did not allege that any of the 1,017 IP addresses had been used to upload or download the same unique copy of . . . [the] works." <u>Patrick Collins, Inc. v. John Does 1-9</u>, No. 12-CV-3161 (C.D. Ill. Sept. 18, 2012).  VPR Internationale also failed to identify "even one IP address that was used within the District to infringe on one of its copyrights."  <u>Id.</u>  Thus in that case, "the request for authority to issue subpoenas . . . was little more than a fishing expedition and an abuse of the discovery process." This case does not suffer from the same procedural problems.  Here there are fewer IP addresses, all of which have been "traced to addresses within this District," and all of which were "used to download and upload the same unique copy of the work." <u>Id.</u>

Even if Defendant is not the actual infringer but merely the subscriber of internet service, the infringer was another person who was using the Defendant's internet service. "Whether the individuals whose identities are sought by the subpoena are liable remains to be litigated and

does not provide grounds upon which to quash the subpoena. The identi[t]y of individuals who may have violated the copyright is essential to resolving the copyright holder's claim." Third Degree Films, Inc. v. Does 1-2010, 4:11 MC 2, 2011 WL 4759283 (N.D. Ind. Oct. 6, 2011). Other courts have agreed, noting that "any concern about identifying a potentially innocent ISP customer, who happens to fall within the Plaintiff's discovery requests upon the ISPs, is minimal and not an issue that would warrant the Court to exercise its inherent power to govern these discovery matters by minimizing or prohibiting the otherwise legitimate, relevant, and probative discovery." Malibu Media, LLC v. John Does 1-9, 8:12-cv-669-T-23AEP, *5 (M.D. Fla. July 6, 2012). Still other courts agree.

> The Court acknowledges that Verizon's compliance with the subpoena may not directly reveal the identity of an infringer. Indeed, the subscriber information Verizon discloses will only reveal the account holder's information, and it may be that a third party used that subscriber's IP address to commit the infringement alleged in this case.

Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012) (Internal citations omitted). The Court went on to note that while the IP address did not guarantee the subscriber was the infringer, "[t]he subpoena is specific enough to give rise to a reasonable likelihood that information facilitating service upon proper defendants will be disclosed if the ISPs comply." Id. Furthermore, "[t]he customers may know who used the Alleged IP Address at issue or whether some spoofing occurred. The identity of the customer is also likely to lead to any neighbor or other person who may have illegally connected to the customer's wireless technology. The subpoenas . . . are a proper use of discovery." Patrick Collins, Inc. v. John Does 1-9, No. 12-CV-3161 (C.D. Ill. Sept. 18, 2012).

While, as Defendant suggests, this process may not be 100% accurate, it is the most accurate and likely way to identify the person responsible for the use of that IP address. Indeed,

it is the only way to enforce one's copyrights against online infringement. Without this ability, copyright owners would have a right without a remedy. Any such state of affairs would violate Chief Justice Marshall's often cited rule that "the very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he received an injury." Marbury v. Madison, 1 Cranch 137, 1803 WL 893, *17 (U.S. 1803).

### B. Plaintiff Has No Bad Intent or Improper Motive

Defendant attempts to attack Plaintiff's efforts in enforcing its copyrights by noting the number of lawsuits filed. Given the massive scale of online infringement, however, the pervasiveness of these types of suits is to be expected. Indeed, "[t]he volume of lawsuits alone does not indicate any impropriety." Patrick Collins, Inc. v. John Does 1-9, No. 12-CV-3161 (C.D. Ill. Sept. 18, 2012) (DKT. #7).

### C. Plaintiff Does Not Issue Demand Letters

Defendant's argument that the subpoena should be quashed because if it is not, Plaintiff will annoy and harass Defendant with "a flurry of demand letters" is without merit. Plaintiff has never issued demand letters to any defendant in any case. Although Defendant attempts to question Plaintiff's settlements with Defendants, such settlements are proper. Regardless of whether Plaintiff settles a case or decides that pursuing the claims against a particular Defendant is no longer feasible, "[e]ither course selected by the Plaintiff would give the copyright owner the opportunity to effectuate its statutorily protected rights and thereby serve our system of justice." AF Holdings, LLC v. Does 1-1,058, CIV.A. 12-0048 BAH, 2012 WL 3204917 at *17 (D.D.C. Aug. 6, 2012).

> At this stage, the plaintiff is attempting to identify those infringing its copyright so that it may investigate the feasibility of proceeding in lawsuits against them. That the plaintiff chooses, after obtaining identifying information, to pursue settlement or to drop its claims altogether is of no consequence to the Court. The

<u>plaintiff . . . has a right to name or decline to assert claims against defendants whose identities and other relevant circumstances become known to the plaintiff.</u>

<u>Id.</u> at *14. (Emphasis added.)

Defendant mischaracterizes Plaintiff's purpose for engaging in settlement activities, suggesting that simply the fact that a Defendant named in litigation may be offered a settlement constitutes improper litigation tactics. This is incorrect. Prior to actually proceeding against defendants, it is proper to contact them to discuss settlement options. The only difference between this case and the countless others filed every day by other plaintiffs in a broad array of civil litigation is that the Plaintiff does not have the ability to identify the defendants before the suit is filed.

> [T]he John Doe Defendants' argument is misguided in that this type of case creates special circumstances that would require judicial review of any motivation to settle, and the Court is not inclined to create a special proceeding to inform any particular John Doe Defendant of a right which is obviously commonly known, i.e. his or her right to defend and litigate this lawsuit.

<u>Malibu Media, LLC v. John Does 1-9</u>, 8:12-cv-669-T-23AEP, *7 (M.D. Fla. July 6, 2012)

The Supreme Court has stated that public policy favors resolutions through settlement. "Rule 68's policy of encouraging settlements is neutral, favoring neither plaintiffs nor defendants; it expresses a clear policy of favoring settlement of all lawsuits." <u>Marek v. Chesny</u> 473 U.S. 1, 11 (1985). Further, Plaintiff has a First Amendment right under the petition clause to make the demand. <u>See</u> <u>Sosa v. DirectTV,</u> 437 F. 3d 923, 937 (9th Cir. 2006) (holding "the protections of the Petition Clause extend to settlement demands as a class," including those made during and prior to a suit.)

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the subject motion.

Dated: November 16, 2012

Respectfully submitted,

NICOLETTI & ASSOCIATES, PLLC

By:      /s/ *Paul J. Nicoletti*
Paul J. Nicoletti, Esq. (P44419)
36880 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel:  (248) 203-7800
Fax:  (248) 203-7801
E-Fax: (248) 928-7051
Email:  paul@nicoletti-associates.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:      /s/ *Paul J. Nicoletti*