UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

MALIBU MEDIA, LLC,

Plaintiff,

v.

JOHN DOES 1-49,

Defendants

Case No. 1:12-cv-06676

12C6676

FILED
NOV 27 2012
Robert M. Dow, Jr THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## DEFENDANTS RESPONSE TO PLAINTIFFS OPPOSITION

I, John Doe 1, am representing myself pro se, because I am receiving public aid, unemployed, have no savings and therefore no means to hire a lawyer or settle the case even if I was lawfully guilty of infringement, which I declare I am not. I therefore find it prudent to respond to the plaintiff's opposition as well inform the court of recent judicial findings directly relevant to this case. (1) New Rulings in cases verbatim to this case (2) Misjoinder based on Swarm Theory Controversy (3) IP Address Controversy, Initial Seeder and statutory damages (4) Reliability of Plaintiff's collection method and Plaintiff's True Intent. Based on these findings I again respectfully move this Honorable Court for dismissal or severance of this case as well as a motion to quash the order granting leave to serve third party subpoenas.

## NEW RULING AND CASE INFORMATION:

Milton I. Shadur Senior United States District Judge, in the Eastern Division of this very Court, acted on new information from the Michigan Law Review, involving case MALIBU MEDIA, LLC v. JOHN DOES 1-25 No. 12 C 7578 that is verbatim to this case including the same plaintiff. I will briefly summarize the relevance of his findings. I respectfully request that this court follow his actions in regards to multiple joinders and swarm theory:

"This Court advised Malibu's counsel that the just-published issue of the Michigan Law Review had included a comprehensive and well-informed student note ("The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits," 111 Mich. L. Rev.283 (2012)) that dealt directly with the problems posed by this and similar lawsuits targeting multiple "John Doe" defendants."

In particular, this Court read for the record this excerpt from pages 292-93 of Volume 111, with footnotes omitted and emphasis in original:

When considering whether John Does have been properly joined, judges should require plaintiffs to plead facts sufficient to show that the defendants were not only part of the same swarm, but that they were part of the same swarm at the same time as one another. If plaintiffs fail to satisfy this standard, expedited discovery should be denied and the improperly joined defendants should be severed from the action. Generally, this means that a plaintiff would be unable to join every member of a swarm that exists for a protracted period of time. Rather, the plaintiff would have to show that all the defendants downloaded the copyrighted work over a short enough period of time to support a probable inference that all the defendants were present in the swarm at the same time. Such a time period would usually span hours rather than days or months.

On November 9th, the Pietz Law Firm filed a motion to reassign this very case and other related cases to Honorable Charles P. Kocoras. In the motion by Pietz the following was said:

"Plaintiff's "extortion scheme" business model depends on one thing: mis-joining multiple John Does into a single action based on a controversial theory of "swarm joinder," which is being rejected by a majority of courts around the country."

"Since there is no controlling Circuit precedent on this issue, from any Federal Court of Appeal, and a few courts have endorsed "swarm joinder," **plaintiff hopes that by parceling its cases out to as many Judges as possible, at least a few of them will bite on "swarm joinder."** (Emphasis added)

"For example, currently ten (10) different Judges of this District are being asked to consider the validity of the same copyright for Plaintiff's pornographic work "Mina's Fantasy" (Judges Kocoras, Shadur, Zagel, Feinerman, Tharp, Castillo, Pallmeyer, Dow, Bucklo and Conlon). Dec'l. of Morgan E. Pietz"

"Each of the Malibu Media cases in this district are identical in the following respects: (1) they were all filed by the same counsel; (2) they all utilize cookie-cutter pleadings, including an essentially identical complaint alleging the same causes of action for copyright infringement of various pornographic films (often the exact same films in different cases)"

2

If the plaintiff's purpose is to seek justice than all related cases should be tried by the same judge. However, as seen by law firms such as The Pietz Law Firm, the plaintiff is trying to manipulate and leverage judicial findings by trying related cases with different judges to maximize its blackmail scheme.

### MISJOINDER BASED ON SWARM THEORY CONTROVERSY:

John Doe #1 objects to the subpoena on the ground that it constitutes an abuse of the discovery process because john does 1-49 have not been properly joined in the underlying action. Further objects to the subpoena because the list of the IP Addresses and associated dates in exhibit A to the complaint appear to refute any allegation that the subscribers were acting in concert, given the time period during which the plaintiff's digital content was allegedly accessed. The documents provided by the plaintiff in this court in this very case to serve third party subpoena on "Comcast" included a list of 49 IP Addresses. Each of the alleged infringing IP Addresses includes a date and time stamp for the alleged infringement that spans from 6/6/2012 through 8/5/2012. The plaintiff's own information used to cite joinder shows that the alleged infringements took place on different days for most of the John Doe's. Therefore, using the information cited by Honorable Judge Milton I. Shadur from the Michigan Law Review, each John Doe could not have been part of the same swarm at the same time as one another. Unless a particular John Doe allegedly infringed on the same day and within a short period of time (hours as indicated above) as that of another John Doe. Further, being that each John was not part of the same swarm as indicated above the John Does in this case have been improperly joined.

John Doe #1 lives next to a municipal park and parking lot and without inspecting John Doe #1's computer or the computers of any visitor, neighbor, and visitor to the park. The

3

plaintiff would be unable to prove guilt against John Doe #1 without a reasonable doubt. Because an IP does not identify the individual that engaged in the alleged unlawful activity, the subpoenas seeking Defendants person information should be quashed. An IP address provides only the location at which one of any number of computer devices may be deployed; much like a telephone number can be used for any number of telephones. In "Bittorent Adult Film Copyright Infringement Cases, 2012, U.S. Dist. Lexis 61447 at * (E.D.N.Y., May 1 2012). Releasing the Defendants personal information will not "prove or disprove something in issue" (i.e. reveal the identity of the alleged co-conspirators). Defendant's telephone numbers and email addresses are absolutely immaterial and irrelevant to the claims made by the Plaintiff. The only reason to request that information is to utilize it to harass Defendants for abuse and extortion of the legal system to achieve quick and easy settlements without the intent to litigate. Adult studios Malibu Media and Patrick Collins were criticized by a New York District Court for using "abusive litigation tactics" against John Doe defendants

Defendant respectfully request that this Honorable Court enter an order quashing the subpoenas, issuing a protective order prohibiting Plaintiff or counsel for Plaintiff from further contact with Movants, and prohibiting their ISPs from disclosing their personal information to Plaintiff and/or counsel for Plaintiff. In the event that Court feels the production of the personal information for Defendants is appropriate, Defendants respectfully request that the Court enter an Order limiting that production to name and address, and denying Plaintiff access to their telephone numbers and email addresses.

As showed by the following cases "Pennsylvania District Court CIVIL ACTION NO. 12-207, CIVIL ACTION NO. 12-2084, CIVIL ACTION NO. 12-2088" the evidence used by the plaintiff and counsel hasn't been proven in court. Honorable Judge Baylson has set a Bellwether

trial to determine the legitimacy of common claims, theories or arguments in mass joinder filings such as this one.

SBO Pictures, Inc. v. Does 1-3036 for example, the court noted:

> "By defining Doe Defendants as ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, Plaintiff's sought-after discovery has the potential to draw numerous innocent internet users into the litigation, placing a burden upon them that weighs against allowing the discovery as designed."

Another case:

> Raw Films, Ltd. v. Does 1-32, 2011 WL 6182025 at *2 (E.D. Va. 2011) (conduct overa three month time span was "insufficient to meet the standards of joinder set forth in Rule 20"). Consequently, the plaintiffs have not satisfied the requirement of establishing that the Doe defendants participated in the same "transaction" or "occurrence" within the meaning of Rule 20.

Another case:

> "Courts may also consider factors such as the motives of the party seeking joinder and whether joinder would confuse and complicate the issues for the parties involved." *SBO Pictures, Inc. v. Does 1-3036*, C-11-4220 (SC) 2011 WL 6002620, at *3 (N.D. Cal. Nov. 30, 2011).

Almost every city block in major cities have a "Starbucks - Coffee shop". Many if not all Starbucks, and other similar establishments have "free wireless internet". Every single individual that uses Starbucks free internet with their laptop or cell phone is then given the "IP Address" of that Starbucks. Starbucks on average sees at least 4.7 - 5 million customers a day. That equates to hundreds, even thousands of people at any given Starbucks coming and going in a matter of minutes that could be identified by one single IP Address. If a John Doe infringed on copyright material in a Starbucks the likelihood of identifying that John Doe by the IP Address alone is incalculable. For the sole purpose that a company would have to use some other means to

identify the infringer other than the IP address, such as facial recognition. Yet Malibu Media, LLC has yet to sue a Starbucks.

Another recent case in the Southern District of Florida found similar issues with a mass joinder BitTorrent case. On July 19th, 2012, Patricia A. Seitz, United States District Judge, disagreed with Bit Torrent Swarm Theory as and went on to say the following:

> (BUBBLE GUM PRODUCTIONS, LLC, v. JOHN DOES 1-80, CASE NO. 12-20367-ClV-SE1TZ/SIMONTON, July 19th, 2012)
>
> "Plaintiff claims that downloading and sharing pieces of a file, which contributes to the chain of data distribution," justifies permissive joinder. Having carefully examined the Com plaint and the relevant legal authorities, the Court disagrees with Plaintiff s contentions. The Doe Defendants' decision to obtain the BitTorrent protocol and download the same video does not in and of itself constitute the same transaction, occurrence, or series of transactions or occurrences. This is because the BitTorrent protocol facilitates the transactions between users, and much of the BitTorrent protocol operates invisibly to the user-after downloading a file, subsequent uploading takes place automatically if the user fails to close the program"
>
> "Therefore, aside from downloading the same Video using BitTorrent protocol, there is nothing that connects all of the Doe Defendants to each other" See Hard Drive Prods., Inc., 809 F.supp.2d at 1 163
>
> "Thus, joinder would lead to cumbersome motion practice and, ultimately, mini-trials involving different testimony and evidence. (Hard Drive Prods. Inc., 809 F.supp.2d at 1 164)
>
> Lastly, the sheer number of Defendants in this case would cause an overly burdensome discovery process if Defendants remain joined. Specifically, if many of the Doe Defendants proceed pro se, hard copy documents must be served on numerous defendants. Furthermore, each Defendant has the right to be present at every other Defendant's deposition."
>
> "The Plaintiff understandably has a keen interest in proceeding against numerous Defendants in one lawsuit to reduce the costs of protecting its copyright by avoiding multiple tiling fees. However, this interest is outweighed by the fact that the requirements for establishing permissive joinder are not met in BitTorrent copyright infringement cases. Infringers of a copyrighted file should be held liable, but they cannot be joined

with hundreds or even thousands of BitTorrent protocol users solely because they downloaded pieces of the same file. Such facts do not satisfy the "same transaction, occurrence, or series of transactions or occurrences" requirement for permissive joinder. Moreover, severing Defendants promotes efficiency as set forth above. For these reasons, the Court finds misjoinder."

Better educated men in the fields of law and justice have argued similar cases such to the one before this court. Summarizing these men and the work on their cases would not do them proper justice and would be beyond my means. Therefore below I will provide this court with their lengthy opinions and conclusions that I agree with and find relevant to this Court case. The material indented below is from the following cases:

> UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORKK-Beech, Inc. v. John Does 1-37 - Document 39Malibu Media, LLC v. John Does 1-26, CV 12-1147 (JS) (GRB), Malibu Media, LLC v. John Does 1-11, CV 12-1150 (LDW) (GRB), Patrick Collins, Inc. v. John Does 1-9, CV 12-1154 (ADS) (GRB):

GARY R. BROWN, United States Magistrate Judge from the cases above had the following to say in regards to issues in several cases nearly verbatim the allegations in this case:

> "By contrast, the half-dozen moving defendants, even at this preliminary stage, have raised a panoply of individual defenses, including age, religious convictions, and technological savvy; misidentification of ISP accounts; the kinds of WiFi equipment and security software utilized; and the location of defendant's router. The individualized determinations required far outweigh the common questions in terms of discovery, evidence, and effort required. Thus, swarm joinder complicates these actions, resulting in waste of judicial resources."

> "Plaintiffs tout the fact that "joinder in BitTorrent copyright infringement cases has been thoroughly analyzed in forty reported opinions and has been permitted in district courts across the country." K-Beech, Mem. in Opp. at 1, DE [25]. However, due to plaintiffs' litigation 21 strategy, which includes avoiding review on the merits except at a preliminary, ex parte stage, these determinations were made without any factual record by judges unaware of the highly individualized, fact specific defenses raised on the motions to quash, or evidence of strong-arm tactics, both of which strongly militate against allowing joinder in these mass actions."

7

"On this issue, one court has observed:

> In addition to the Rule 20(a)(2) criteria, the court has a parallel duty to ensure that permissive joinder "would comport with the principles of fundamental fairness or would [not] result in prejudice to either side. The court also has discretion to sever an action when joinder would confuse and complicate the issues for all parties involved. It is likely that Defendants would assert different factual and legal defenses, and would identify different witnesses. Case management and trial . . . would be inefficient, chaotic, and expensive. Joining Defendants to resolve what at least superficially appears to be a relatively straightforward case would in fact transform it into a cumbersome procedural albatross. These difficulties would place tremendous burden on Defendants as well. To provide two illustrative examples, each Defendant would have the right to be present at every other Defendant's depositions—a thoroughly unmanageable and expensive ordeal. Similarly, pro se Defendants, who most likely would not e-file, would be required to serve every other Defendant with a copy of their pleadings and other submissions throughout the pendency of the action at substantial cost. The court cannot permit a case to proceed in this manner. Pacific Century, 2011 WL 5117424, at *3 (quotations and citations omitted). As such, I find that principles of fundamental fairness and judicial economy dictate that permissive joinder not be allowed in these cases."

However, in its argument, plaintiff neglects to observe that Rule 1 requires that disputes should be resolved in a manner that is "just, speedy and inexpensive." Fed. R. Civ. P. 1 (emphasis added). In this case, John Doe #16 offered the plaintiff "unfettered access" to his computer and employment records demonstrating that he was not at home at the time of the downloading, yet still finds himself pressured to settle for thousands of dollars. It would be difficult to characterize such a resolution as "just" even if speedy and inexpensive (for the plaintiff). Cf. On The Cheap, LLC v. Does 1-5011, -- F.R.D. --, 172011 WL 4018258, at *4 (N.D.Cal. Sept. 6, 2011) ("plaintiff's desire to enforce its copyright in what it asserts is a cost-effective manner does not justify perverting the joinder rules to first create . . . management and logistical problems . . . and then offer to settle with Doe defendants so that they can avoid digging themselves out of the morass plaintiff is creating")

Joinder is Inappropriate

In opposing the motions to quash, K-Beech relies heavily on the "swarm joinder" theory championed by plaintiffs here and elsewhere. Rule 20 governs the permissive joinder of parties and states that defendants may be joined in one action where a plaintiff states a right to relief 19"arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in

the action." Fed. R. Civ. P. 20 (a) (2) (A) & (B). The argument is that every user who participates in the "swarm" is acting in concert to violate plaintiffs' copyrights

Highly questionable factual assumptions underlie plaintiffs' contention that these cases satisfy the Rule 20 requisites for joinder. By way of example, Plaintiffs assert that the John Does were "acting in concert with each other," "working together", and "directly interacted and communicated with other members of that swarm." See, e.g., Malibu 26, Compl. ¶¶ 10, 33, 34. Much of the BitTorrent protocol operates invisibly to the user – after downloading a file, subsequent uploading takes place automatically if the user fails to close the program. Exhibit D to the complaints, which allegedly documents the "interactions" between defendants, is a page of machine instructions which clearly demonstrate that the user plays no role in these interactions. Indeed, "[t]he bare fact that Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world." Hard Drive Prods., Inc. v. Does 1-188, 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011).

Moreover, the dates of downloading provided in the complaints – which are often weeks or months apart -- further undermine the allegation that all of the John Does were part of a single swarm. Thus, even assuming that the John Does are the actual infringers, the assertion that defendants were acting in concert rests upon a thin reed. See generally Raw Films, Ltd. v. Does 1-32, 2011 WL 6840590, at *2 (N.D.Ga. Dec. 29, 2011) (stating that the "differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert"); Raw Films, Ltd. v. Does 1-32, 2011 WL 6182025 at *2 (E.D.Va. 2011) (conduct over 2 a three month time span was "insufficient to meet the standards of joinder set forth in Rule 20"). I find that plaintiffs have not satisfied the requirement of establishing that defendants participated in the same "transaction" or "occurrence" within the meaning of Rule 20.

Alternatively, because joinder is permissive, this Court retains the discretion to sever under Rules 20(b), 21, and 42 (b). See Third Degree Films v. Does 1-131, -- F. Supp. 2d --, 2012 WL 692993, at *3 (D. Ariz. Mar. 1, 2012). In determining whether to exercise that discretion, the court should "examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side." On the Cheap, 2011 WL 4018258, at *2 (quoting Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9thCir. 2000)). "Courts may also consider factors such as the motives of the party seeking joinder and whether joinder would confuse and complicate the issues for the parties involved." SBO Pictures, 2011 WL 6002620, at *3.

Plaintiffs identify two common questions of fact in these actions: the plaintiffs' ownership of copyrights, and the workings of BitTorrent. By contrast, the half-dozen moving defendants, even at this preliminary stage, have raised a panoply of individual

defenses, including age, religious convictions, and technological savvy; misidentification of ISP accounts; the kinds of WiFi equipment and security software utilized; and the location of defendant's router. The individualized determinations required far outweigh the common questions in terms of discovery, evidence, and effort required. Thus, swarm joinder complicates these actions, resulting in waste of judicial resources.

Plaintiffs tout the fact that "joinder in BitTorrent copyright infringement cases has been thoroughly analyzed in forty reported opinions and has been permitted in district courts across the country." K-Beech, Mem. in Opp. at 1, DE [25]. However, due to plaintiffs' litigation 21strategy, which includes avoiding review on the merits except at a preliminary, ex parte stage, these determinations were made without any factual record by judges unaware of the highly individualized, fact specific defenses raised on the motions to quash, or evidence of strong-arm tactics, both of which strongly militate against allowing joinder in these mass actions.

On this issue, one court has observed:

In addition to the Rule 20(a)(2) criteria, the court has a parallel duty to ensure that permissive joinder "would comport with the principles of fundamental fairness or would [not] result in prejudice to either side. The court also has discretion to sever an action when joinder would confuse and complicate the issues for all parties involved. It is likely that Defendants would assert different factual and legal defenses, and would identify different witnesses. Case management and trial . . . would be inefficient, chaotic, and expensive. Joining Defendants to resolve what at least superficially appears to be a relatively straightforward case would in fact transform it into a cumbersome procedural albatross. These difficulties would place tremendous burden on Defendants as well. To provide two illustrative examples, each Defendant would have the right to be present at every other Defendant's depositions—a thoroughly unmanageable and expensive ordeal. Similarly, pro se Defendants, who most likely would not e-file, would be required to serve every other Defendant with a copy of their pleadings and other submissions throughout the pendency of the action at substantial cost. The court cannot permit a case to proceed in this manner.

Pacific Century, 2011 WL 5117424, at *3 (quotations and citations omitted). As such, I find that principles of fundamental fairness and judicial economy dictate that permissive joinder not be allowed in these cases

"In the four cases before this Court, plaintiffs have improperly avoided more than $25,000 in filing fees by employing its swarm joinder theory. Considering all the cases filed by just these three plaintiffs in this district, more than $100,000 in filing fees have been evaded. If the reported estimates that hundreds of thousands of such defendants have been sued nationwide, plaintiffs in similar actions may be evading millions of

dollars in filing fees annually. Nationwide, these plaintiffs have availed themselves of the resources of the court system on a scale rarely seen. It seems improper that they should profit without paying statutorily required fees."

## FURTHER IP ADDRESS CONTROVERSY AND INITIAL SEEDER

The plaintiff Malibu Media, LLC has failed to provide the court with the initial seeder of the allegedly infringed upon material. As stated in previous motion and by the plaintiff itself, the infringing actives were carried out by Bit Torrent through a "swarm". A swarm requires more than one individual computer to function. However, the plaintiff's information that was provided to the court only lists one IP Address on some days. A swarm cannot function by 1 IP Address alone. An Initial seeder must share a file and others must connect to that seeder to further download and upload said file. For example:

> For a swarm to be active it requires more than one active computer/ip address. The downloaded file has to be seeded from somewhere for another person to download it. Since this is the case then why does the plaintiffs list of IP addresses only show one person accessing the file on a particular day shouldn't it be a minimum of 2? Example the plaintiffs list of IP addresses alleges that John Doe 1 accessed the file on June 6th alone, and John Doe 9 accessed "file" on June 8th alone. But no other IP address is alleged to have accessed the file on the same date.no swarm is possible by the plaintiff's own explanation of swarm theory. Most likely because there are other members of the swarm from other states since a swarm is not limited to one state and is in fact worldwide.

This is an example of the plaintiff cheery picking alleged infringers from the swarm and not being upfront with the full information. If as the plaintiff states that all infringers are jointly and severally liable then all seeders, including the original seeder must be identified otherwise no full relief is possible.

The initial Complaint failed to include any allegations against the initial seeder. The initial seeder is the individual that placed the file to be shared on the internet through Bit Torrent to begin with. The alleged infringement is impossible without an initial seeder, and the initial

seeder may very well have had a legal privilege to publish or distribute the works for free. However, the Plaintiffs failed to join the initial seeder as a party to this suit. Dismissal under F.R.C.P. 19 mandates a two-step analysis: (1) Whether an absent party is necessary to the suit; and (2) if so, and if that party cannot be joined, whether the party is indispensable such that in equity and good conscience the suit should be dismissed. *Clinton v. Babbitt,* 180 F.3d 1081, 1088 (9th Cir. 1999). Here, the absent party is necessary to the suit because, under F.R.C.P. 19(a), complete relief cannot be accorded among those already parties to this suit in the absence of the initial seeder or other members of the swarm. These absent parties are the sources from which Doe's 1-49 would have received the file and parties to whom John Doe's 1-49 allegedly distributed it. Without this, complete relief is impossible.

Moreover, Malibu may have already been made whole for the swarm-led infringements in this case by alleged members of the same swarm in jurisdictions outside of Illinois. The maximum damages in this case are $150,000 per **work**, not per **Defendant**. 17 USC § 504(C)(1); *Arista Records LLC v. Lime Group LLC,* 784 F. Supp. 2d 313, 316 (S.D.N.Y. 2011) ("Congress intended for the Copyright Act to treat jointly and severally liable infringers the same way that the statute treats individually liable infringers. For any individually liable infringer, a plaintiff is entitled to one statutory damage award per work. For any two or more jointly and severally liable infringers, a plaintiff is entitled to one statutory damage award per work"); *see also Columbia Pictures TV v. Krypton Broad. of Birmingham, Inc.,* 106 F.3d 284, 294 (9th Cir. 1997) ("[W]hen statutory damages are assessed against one defendant or a group of defendants held to be jointly and severally liable, each work infringed may form the basis of only one award, regardless of the number of separate infringements of that work.") Because of the factual issues presented by Malibu Media's right to recovery – or lack thereof, depending on the source and amount of

Plaintiff's prior recovery for infringements of these works – Defendant's potential liability (and Malibu's right to recovery) cannot be assessed without all of the swarm members being joined in the litigation.

Thus, these absent swarm members must be joined or the action dismissed. Otherwise, both Defendant and the other Does absent from this action may face inconsistent judgments before numerous courts, and such a discrepancy may result in Plaintiff achieving a double or triple recovery in what should be one consolidated action.

### RELIABILITY OF PLAINTIFF'S COLLECTION METHOD AND PLAINTIFF'S TRUE INTENT:

I John Doe #1 challenge the procedures used by Malibu Media, LLC's investigator to identify infringing IP addresses, including the Alleged IP Addresses. My basis for the claim that the Plaintiff is improperly attempting to extract settlements from innocent people.

Because Malibu does not know the true identities of its alleged infringers when it files suit, it can only identify its potential defendants by their Internet Protocol, or "IP", addresses allegedly observed sharing the copyrighted works through BitTorrent. Malibu harvests these IP addresses using automated software that, according to Plaintiff "scans the entire Internet for all BitTorrent infringement". In sum, Plaintiff claims to monitor the entire Internet through a third party vendor -- IPP Limited, reviewing a mind-numbing volume of online transactions and exchanges of information, and then somehow culling out those online interactions that it believes violate its copyrights. In exchange, IPP Limited is, on information and belief, is a stakeholder in these actions –collecting a percentage of each settlement or judgment.

At the heart of the Plaintiff's complaint in this district and through the country is its acknowledgment that it retained a so called "forensic company" IPP, Limited ("IPP") and

software referred to as "INTERNATIONAL IPTRACKER v1.2.1" "to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to reproduce, distribute, display or perform Plaintiffs' copyrighted works. Malibu's investigation company, IPP, Ltd., was previously called Guardaley, Ltd. While it had that name, it was accused of being the initial seeder for swarms.

I ask the court determine the reliability of the company IPP, Limited and whether the software it used (INTERNATIONAL IPTRACKER v1.2.1) is even a reliable trustworthy source to file a legal case on that the court can trust without a reasonable doubt. IPP, Limited (also known as or previously known as GuardaLey) has been shown to provide unreliable software and often is involved in the very sharing of the files. In other words IPP, Limited may actually be providing a "honeypot" for which it is the initial seeder that the John Does in this case received the initial file in the alleged copyright infringement. This also borderlines as entrapment since the alleged infringement couldn't have taken occurred if companies hadn't provided the honeypot to begin with.

The software INTERNATIONAL IPTRACKER v1.2.1 is a propriety piece of software that has not been certified for use as a legal standard by the court, FBI or other government agency to my knowledge. Nor have I been able to find any information about the validity of any of the results provided. To put it plainly this software isn't a government recognized technology crime lab that has been approved by the Supreme Court. Just because a company like Malibu, Media LLC uses this software all the time doesn't prove the reliability or validity of the results.

> "Documents filed at the German court further suggest that GuardaLey might also operate pirate honeypots."GuardaLey operates a 'honeypot'—that is they represent "by means of a falsified bit field, that it was always in possession of 50% of the file being sought." If the actual file is being offered than an implied license is operative. If it is a

garbage file, than no infringement occurs. In either instance, IP addresses are being identified that did not infringe," the plaintiffs assert."

It is clear that the evidence gatherers are by no means an objective party. On the contrary, it can be argued that this German based company or subsidiaries are the prime reason why more than 200,000 people have been sued in the United States. In the paper by Washington University available here:

http://dmca.cs.washington.edu/uwcse_dmca_tr.pdf

The paper shows that the tracking methods used by anti-piracy enforcement companies are not watertight, to say the least. In fact, it has been reported that it is possible to trap people into being reported to the MPAA or RIAA, by simply letting them click on the announce url of a BitTorrent tracker. The "announce URL" does not download or infringe upon a company's work. The research from the University of Washington confirm these vulnerabilities, as they managed to receive hundreds of infringement notices addressed to the IP Address of a networked printer which cannot even run Bit Torrent and therefore was reporting false positives.

In a German court case where GuardaLey was sued by one of the law firms (Baumgarten Brandt) they partnered with. The law firm filed suit after it discovered that GuardaLey was aware of several technological flaws concerning their evidence, but chose not to disclose them. The law firm won the case. Based on an independent review the German judge concluded that GuardaLey's evidence gathering technology does not check whether the accused actually downloaded (or uploaded) content. A major flaw that was previously exposed by the University of Washington, where copyright holders accused a printer of pirating. The findings are especially troubling because some major BitTorrent trackers insert random IP-addresses into BitTorrent

swarms. These IP-addresses are not actually trying to download any files, but they may be accused of doing so based on GuardaLey's evidence.

Based on the information above from multiple courts the Defendant respectfully request that this Honorable Court enter an order quashing the subpoenas, issuing a protective order prohibiting Plaintiff or counsel for Plaintiff from further contact with Defendants, and prohibiting their ISPs from disclosing their personal information to Plaintiff and/or counsel for Plaintiff. In the event that Court feels the production of the personal information for Defendants is appropriate, Defendants respectfully request that the Court enter an Order limiting that production to name and address, and denying Plaintiff access to their telephone numbers and email addresses.

Dated: November 26th, 2012                    Respectfully submitted,

                                              By: /s/ John Doe
                                              John Doe 1, IP: 24.1.13.173
                                              Johndoe149malibu@gmail.com

## CERTIFICATE OF SERVICE

This is to certify that a true, correct and complete copy of the forgoing response to plaintiff's opposition was served vie Certified First Class Mail AND Electronic Message (E-Mail), vie postage pre-paid addressed to Plaintiff's counsel of record as follows.

    Paul J. Nicoletti, ESQ. (P44419)
    36880 Woodward AVE, Suite 100
    Bloomfield hills, MI 48304
    Tel: (248) 203-7800
    Fax: (248) 203-7801
    E-Fax: (248) 928-7051
    Email: paul@nicoletti-associates.com
    *Attorneys for Plaintiff*

Dated: November 27th, 2012          Respectfully submitted,

                                                   By: /s/ *[signature]*
                                                   John Doe 1, IP: 24.1.13.173
                                                   Johndoe149malibu@gmail.com