**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MALIBU MEDIA, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12-cv-6676 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| JOHN DOES 1-49, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

In its complaint, Plaintiff Malibu Media alleges copyright infringement and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501 against Doe Defendants 1-49. Soon after Plaintiff filed its complaint, it sought leave to serve third party subpoenas on Comcast prior to the Rule 26(f) conference. The Court granted Plaintiff's motion. Since then, Plaintiff has voluntarily dismissed its claims against all Defendants other than Does 1, 29, 34, and 35. Before the Court are the remaining Defendants' motions to quash the subpoenas, dismiss or sever for misjoinder, to dismiss for failure to make a prima facie showing of copyright infringement, and, if those motions are denied, Doe Defendant 1 asks the Court to limit the scope of the subpoena and for a protective order preventing the disclosure of any information obtained though the subpoenas [12, 14, 16, 20]. For the reasons stated below, the motions to quash, sever, dismiss, and to limit the scope of the subpoenas are denied [12, 14, 16, 20], except that Doe Defendant 1's motion for a protective order is granted.

**I.      Background**

Plaintiff claims that it is the owner of the copyright for a film called Young & Hot and that Defendants used computer software called BitTorrent to illegally copy and distribute its film. In an opinion issued last month, Judge Tharp provided a succinct description of how BitTorrent works:

> BitTorrent is a software protocol that facilitates the practice of peer-to-peer file sharing used to distribute large amounts of data over the internet. To share information using BitTorrent, an initial file-provider (the "seeder") elects to share an initial file, called a "seed," with a torrent network. The file to be distributed is divided into segments called "pieces." Other users ("peers") intentionally connect to the seed file to download it. As each peer receives a new piece of the file, the peer also immediately becomes a source of that piece for other peers, relieving the original seeder from having to send that piece to every peer requesting a copy. This is the key difference between BitTorrent and earlier peer-to-peer file sharing systems: "BitTorrent makes file sharing a cooperative endeavor." Sean B. Karunaratne, *The Case Against Combating BitTorrent Piracy through Mass John Doe Copyright Infringement Lawsuits,* 111 Mich. L.Rev. 283, 290 (2012) (hereinafter, *The Case Against Mass Joinder*). It is "architecturally impossible for any peer on the network to take without giving." *Id.* at 288.
>
> After a peer completely downloads the file, it continues to transmit pieces of the file to other users until it disconnects from BitTorrent. As additional peers request and receive pieces of the same file, each user becomes a part of the network from which the file can be downloaded. As more users join the network, the speed and efficiency of downloads increases. The group of seeders and peers uploading and downloading the identical file are called a "swarm." While connected to the swarm, users continuously download pieces of the file until they have obtained a complete file and continuously upload pieces of the file to other users in the swarm. Even after a user exits the swarm, the identical file pieces that the user downloaded from other users and then shared with peers continue to circulate throughout the swarm. BitTorrent swarms can survive continuously for months or even years.

*TCYK, LLC v. Does 1-87*, 2013 WL 3465186, at *1 (N.D. Ill. July 10, 2013).

Here, Plaintiff alleges that Defendants were part of the same swarm, downloading and uploading the film at various times between June 6 and July 25, 2012. Plaintiff's allegations are

2

based on the fact that its investigator was able to download a piece of an identical copy of Young & Hot from each Defendant's IP address. Because of the way BitTorrent works, each Defendant (or someone using that address) must have had part of the film on his or her computer and allowed others to download it. The investigator was also able to ascertain — and Defendants do not deny — that Defendants are located in this judicial district and used Comcast as the internet service provider.

## II. Discussion

### A. Motions to Quash

All Defendants have moved to quash the subpoenas Plaintiff has served on Comcast. As of now, Defendants are known to Plaintiff only by their IP addresses and general locations. The subpoenas request Defendants' name, address, telephone number, email address, and the Media Access Control ("MAC") address (used to identify the specific computer used to download and upload the film).

Defendants argue first that the subpoenas should be quashed because they subject the Defendants to an undue burden. See Fed. R. Civ. P. 45(c)(3)(A)(iv). The claimed undue burden is that Defendants will suffer a reputational injury if they are identified as the alleged infringer. The problem with this argument is that the undue burden referred to by Rule 45 is the burden on the subpoenaed party, in this case Comcast. See *Malibu Media, LLC v. John Does 1-6*, 2013 WL 2150679, at *4 (N.D. Ill. May 17, 2013) (citing cases involving subpoenas of internet service providers). Accordingly, the subpoenas will not be quashed as imposing an undue burden on Defendants.

Defendants also argue that the subpoenas should be quashed because the burden of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C)(iii). Defendants believe the likely benefit is small because the subpoenas will only reveal the Comcast *subscriber's* identity and that is not necessarily the alleged infringer. The infringer could be, for example, a houseguest or a neighbor stealing the subscriber's Wi-Fi through a wall. Comcast, therefore, cannot tell Plaintiff who actually used the IP address to enjoy Young & Hot. And the burden is high, Defendants argue, because the subscriber is going to be outed as a person who may have enjoyed such a film — causing or threatening significant reputational injury. In fact, Defendants believe that threating reputational injury is the very point of this lawsuit. They maintain that the sole object of this lawsuit is to leverage the shame of downloading films like Young & Hot in order to force a quick settlement.

The Court understands that Defendants are in an undesirable spot, and their assessment of Plaintiff's motivation may be more or less correct, but that does not mean that the burden of Plaintiff's proposed discovery outweighs its benefit. The "burden" that Defendants have identified is simply the burden of being accused of stealing pornography. It is not a wild assumption on Plaintiff's part that the subscriber may be the alleged infringer or may lead to the alleged infringer. Without connecting the IP address to a person, Plaintiff would have no way of prosecuting infringement of its claimed copyright. The Court will not prohibit this discovery because it is less than certain to identify the individual who Plaintiff really wants to find. See also *Malibu Media, LLC*, 2013 WL 2150679, at *5 (describing the subpoena to discover the subscriber as a "useful starting point for identifying the actual infringer" and refusing quash the subpoena based on a defendant's general denial of liability). And the Court will not prohibit Plaintiff's requested discovery because it will allow Plaintiff to make reasonable, albeit

4

somewhat embarrassing, claims against each Defendant. Defendants' motions to quash are denied.

Finally, Doe Defendant 29 asks the Court to modify the subpoena to require Comcast to provide Plaintiff with only the subscriber's name and address, and not their phone number, email, and MAC address. Defendant's concern is that the additional information is not required to effectuate service and that it will be used to harass him or her with settlement demands. The Court will not modify the subpoena for two reasons. First, basic information about Defendant will be produced in the ordinary course of discovery. It would serve little purpose to deny today what Plaintiff would be entitled to tomorrow. Second, Plaintiff is aware that it cannot use Defendant's personal information to coerce Defendant into a settlement. If Defendant's fears of harassment are founded, the Court will hear Defendant's complaint and take appropriate action.

### B. Motions to Sever for Improper Joinder

Federal Rule of Civil Procedure 20(a)(2) permits defendants to be joined in a single action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Beyond these two requirements, consideration is given as to whether joinder would result in prejudice against any parties or otherwise cause delay. *First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 252, (N.D. Ill. 2011). If parties have been improperly joined as defendants, the court may sever the claims pursuant to Rule 21. Rule 21 provides, "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." The district court has "broad discretion whether to sever a

claim under Rule 21." *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000). Claims may be severed, and the severance may create two separate proceedings, provided that the claims are "discrete and separate." *Gaffney v. Riverboat Services of Indiana, Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (quoting *Rice*, 209 F.3d at 1016).

Defendants' arguments that the claims against them should be severed boil down to this: (1) Defendants contributed to the same swarm but they did so weeks apart, so Plaintiff cannot claim that they acted "in concert," and therefore joinder is inappropriate, and (2) Defendants believe that they would be prejudiced by the variety of defense arguments that each Defendant would likely present at trial.

The first point is repeated throughout the Defendants' briefs and is a theme sounded by those skeptical of BitTorrent suits like this one. See, *e.g.*, *The Case Against Mass Joinder* (arguing that direct collaboration should be required for joinder). The problem with the argument is that Rule 20 does not require direct transactions or collaboration. In fact, Rule 20 expressly allows for joinder based on a "series of transactions or occurrences." The Court has little doubt that participation in a swarm during a relatively limited time-period of satisfies that rule. Other district courts agree. See, *e.g.*, *TCYK, LLC*, 2013 WL 3465186, at *3 (citing cases from D. Mass, E.D. Mich, and E.D. Tex); *Malibu Media, LLC*, 2013 WL 2150679, at *8 ("[I]t is difficult to see how the sharing and downloading activity alleged in the Complaint — a series of individuals connecting either directly or with each other as part of a chain or 'swarm' of connectivity designed to illegally copy and share the exact same copyrighted file — could *not* constitute a 'series of transactions or occurrences' for the purposes of Rule 20(a).") (quoting *Digital Sin, Inc. v Does 1-176*, 279 F.R.D. 239, 244 (S.D.N.Y. 2012)). Defendants are alleged to have downloaded identical copies of a single film and to have shared that same film with others

doing the same thing, embodying and sustaining the swarm, all during a limited period of time. That is a *series* of transactions or occurrences; to conclude otherwise ignores the word "series," and would improperly restrict Rule 20(a)(2)(A) to the same transaction or occurrence.

Next Defendants argue that they would be prejudiced by the variety of defense arguments that each Defendant would likely present at trial. There are two responses to this concern. First, Rule 20(a)(2)(B) requires common questions of fact or law, but it does not require that all questions of fact or law be shared. See, e.g., *Sunlust Pictures, LLC v. Does 1-75*, 2012 WL 3717768, at *4 (N.D. Ill. Aug. 27, 2012). Here, Defendants use the same internet service provider, live in the same judicial district, and are accused of using the same technology to illegally download and share the same movie. So, plainly, there are common questions of fact or law. Second, this case is at the pleading stage, but if as the case progresses and factual and legal differences emerge that make joinder inappropriate, the Court can reconsider its ruling. Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."); *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241 (N.D. Ill. 2011) ("The Court recognizes that each Doe Defendant may later present different factual circumstances to support individual legal defenses. Prospective factual distinctions, however, will not defeat the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B) at this [early] stage in the litigation."). Accordingly, the motions to sever for improper joinder are denied.

### C.   Doe Defendant 1's Motion to Dismiss

According to a table attached to Plaintiff's complaint, Doe Defendant 1 is alleged to have infringed Plaintiff's copyright for Young & Hot on June 6, 2012. Plaintiff did not register the

7

film with the United States Copyright office until June 8, 2012. Doe Defendant 1 argues that because the film was not registered at the time of the alleged infringement, he or she cannot be liable for statutory damages or attorney's fees. As authority for this proposition, Doe Defendant 1 cites 17 U.S.C. § 412, which states:

> In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(c), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for--
>
> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

Plaintiff responds that its work was first published in June of 2012 and that it was registered the same month. See [1-2]. The provision cited by Doe Defendant 1 provides for a three-month grace period: so long as the work is registered within three months of publication, the copyright holder may recover statutory damages and fees. See, *e.g.*, *Hays v. Sony Corp. of Am.*, 847 F.2d 412, 415 (7th Cir. 1988) ("The plaintiffs could not obtain statutory damages or attorney's fees, because they did not register their copyright within three months after first publishing the [work] * * * ."); *Television Digest, Inc. v. U.S. Tel. Ass'n*, 841 F. Supp. 5, 11 (D.D.C. 1993) ("Statutory damages are available for all infringements of copyrights registered within three months after the first publication of the work.") *Singh v. Famous Overseas, Inc.*, 680 F. Supp. 533, 536 (E.D.N.Y. 1988) ("[17 U.S.C. § 412(2)] provides a grace period of three months after publication during which registration can be made without loss of remedies: full remedies could be recovered for

8

any infringement begun during the three months after publication if registration is made before that period has ended. This exception is needed to take care of newsworthy or suddenly popular works which may be infringed almost as soon as they are published, before the copyright owner has had a reasonable opportunity to register his claim.") (quoting H.R. Rep. No. 94–1476). Because Plaintiff has alleged that its work was registered within the grace period provided by 17 U.S.C. § 412, Doe Defendant 1's motion to dismiss is denied.

### D. Motion for a Protective Order

In the event that the Court denied Doe Defendant 1's motions to quash or dismiss, he or she also moved for a protective order requiring that any information released by Comcast remain confidential. Plaintiff does not oppose the motion and agrees to allow Doe Defendant 1 to proceed anonymously through the end of discovery. Considering the sensitive subject matter, the Court agrees that such a protective order is appropriate and so the motion is granted: Doe Defendant 1 may proceed anonymously at least through the end of discovery. The Court believes that the same order would be appropriate for the other remaining Defendants. The parties should confer as to whether they can agree to such an order and, if not, the remaining Defendants may move for the entry of one under Rule 26(c), see *Hard Drive Productions v. Does 1-48*, 2012 WL 2196038, at *6 (N.D. Ill. June 14, 2012).

### III. Conclusion

Defendants' motions [12, 14, 16, and 20] are denied except for Doe Defendant 1's motion for a protective order, which is granted.

Dated: August 22, 2013

                                                Robert M. Dow, Jr.
                                                United States District Judge

10